Lisa M. JONES, Appellee,

Equal Employment Opportunity Commission, Amicus Curiae,

v.

AMERICAN STATE BANK, Appellant.

No. 87–5480.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1988.

Decided Sept. 21, 1988.

ing to which a claimant was deferred pursuant to Title VII.

Robert Van Norman, Rapid City, S.D., for appellant.

Jane L. Wipf, Rapid City, S.D., for appellee.

Donna J. Brusoski, Washington, D.C., for amicus curiae E.E.O.C.

Before HEANEY and MAGILL, Circuit Judges, and EDWARDS,* Senior Circuit Judge.

HEANEY, Circuit Judge.

This case comes to us on appeal from the district court for the district of South Dakota, 676 F.Supp. 201. That court granted Jones attorney's fees and costs in recognition of her successful prosecution of a sex discrimination claim before a state agency. On appeal, appellant argues that the district court lacked jurisdiction and abused its discretion in its award of fees and costs.

We affirm the district court in all respects and hold that a claimant may bring an action in federal court to recover attorney's fees for work done in a state proceed-

## FACTS

American State Bank (Bank) hired Lisa Mae Zechin Jones as a teller in the spring of 1986. Later that spring, Jones informed the officers of the Bank that she was pregnant. The officers immediately fired her. During subsequent proceedings, the Bank admitted that Jones was terminated because she was pregnant.[1]

Jones filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) which was deferred to the South Dakota Division of Human Rights (Agency) for investigation and review. Deferral to the Agency was mandatory under § 706(c) of Title VII of the Civil Rights Act of 1964, 78 Stat. 259, as redesignated, 86 Stat. 104, 42 U.S.C. § 2000e–5(c) (Title VII).[2] The Agency found that the Bank's conduct violated South Dakota law and Title VII.[3] It awarded Jones back pay, interest, costs and disbursements, and ordered reinstatement, as well as the purging of all negative references from Jones' employment records. The Agency declined to award attorney's fees because such fees were unavailable under South Dakota law.[4]

---

* The HONORABLE GEORGE C. EDWARDS, JR., United States Senior Circuit Judge for the Sixth Circuit, sitting by designation.

1. *Lisa M. Jones v. American State Bank* 2 (Memorandum Opinion; S.D.Dep't Comm. & Reg. 2/5/87) (hereinafter Hearing Record) ("Its only defense is that nonpregnancy was a condition of employment...."). The Bank offered additional reasons for plaintiff's termination but conceded they were of little consequence. As the hearing examiner stated, "These reasons did not, according to Ms. McCollum, constitute the actual reasons for the firing. Ms. McCollum readily admitted that Mrs. Jones was fired because she was pregnant * * *." *Id.* at 3. The Assistant Attorney General *who sat as the hearing examiner* found these reasons "clearly pretextual," *id.* at 12, and concluded that the Bank had made its decision on the basis of "stereotypical assumptions of the abilities of a pregnant person" inconsistent with the Bank's own prior experience during the pregnancies of "at least three tellers." *Id.* at 9. The hearing examiner concluded that non-pregnancy was not a bona fide occupational qualification. *Id.* at 10. These findings of fact and conclusions of law

were unanimously adopted by the South Dakota Human Rights Commission in an Order dated March 9, 1987.

2. The South Dakota Human Rights Commission is a designated deferral agency under section 706, 29 C.F.R. §§ 1601.74(a) and 1601.80.

3. *See* S.D.Codified Laws Ann. §§ 20–13–10 (1987) (prohibiting sex discrimination), 20–13–27 (Human Rights Commission rulemaking); S.D.Admin.R. 20:03:09:12 (prohibiting employment policies or practices that discriminate on the basis of pregnancy); *see also* 42 U.S.C. § 2000e(k) (Title VII "Definitions"), as amended by The Pregnancy Discrimination Act of 1978, Pub.L. 95–555, 92 Stat. 2076 (overruling *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (exclusion of pregnancy from disability-benefits plan was not gender-based discrimination)). *See generally, Newport News Shipbuilding and Dry Dock Co. v. EEOC,* 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983) (discussing this change).

4. Hearing Record at 13–15.

Jones filed suit in federal court to recover attorney's fees, subsequently securing a right-to-sue letter from the EEOC. After reviewing the evidence, the district court awarded attorney's fees and costs in the sum of $24,594.97, noting that the Bank's recalcitrance had lengthened the proceeding.[5] The court denied Jones' requests for enhancement and interest.

On appeal, the Bank makes four claims, three relating to the district court's jurisdiction. The Bank argues that: (1) an action solely for attorney's fees may not be brought in federal court; (2) the failure to obtain a right-to-sue letter at the outset was grounds for dismissal; and (3) Jones failed to exhaust state remedies.[6] Finally, the Bank argues that the district court abused its discretion and incorrectly applied the law in fixing the amount of the fee. We consider in detail only the first two jurisdictional claims.[7]

## I. *Actions for Attorney's Fees*

■ The Bank argues that Jones should not be permitted to sue in federal court merely for attorney's fees. It asks us to read the Supreme Court's decision in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), as leaving this question open. The Bank argues that *Carey* is distinguishable from the present case because the plaintiff in *Carey* had initially also sought adjudication on the merits in federal court. Lastly, the Bank claims that Jones was afforded "complete relief" by the agency.

We disagree with the Bank's reading of *Carey*. In *Carey*, the plaintiff filed a charge with the EEOC alleging that she was not hired because of her race. The EEOC deferred the matter to the New York State Division of Human Rights (Division). The hearing examiner awarded her back pay and ordered the employer to offer Carey employment. No attorney's fee was awarded. The employer began a series of appeals within the New York administrative and judicial system. Meanwhile, Carey filed suit in federal district court alleging discrimination and seeking remedies which included attorney's fees. At a pre-trial conference, the employer agreed that if it was denied leave to further appeal in New York's state courts, it would comply with the Division's Order. Subsequently, the employer was denied leave to appeal, and the parties agreed to dismiss all parts of the federal action except Carey's request for attorney's fees. *Carey*, 447 U.S. at 56–59, 100 S.Ct. at 2027–2029. The district court denied Carey's request. 458 F.Supp. 79 (S.D.N.Y.1978). The Second Circuit reversed, holding that prevailing parties before state agencies could seek fees in federal court. 598 F.2d 1253, 1260 (1979).

The Bank is correct in arguing that there was some dispute among the Supreme Court Justices over what issue was presented in *Carey*. However, at least six Justices, if not eight, believed that the issue presented was "whether, under Title VII of the Civil Rights Act of 1964, a federal court may allow the prevailing party attorney's fees for legal services performed in prosecuting an employment discrimination claim in *state* administrative and judicial proceedings that Title VII requires federal claimants to invoke." *Carey*, 447 U.S. at 56, 100 S.Ct. at 2027.[8] Jus-

---

5. Partial Transcript of Hearing, Oct. 13, 1987, 5–6. The district court commented extensively on the relationship between the fees and defendant's claims, which were at times "frivolous" and "obstreperous." *Id.* at 2–6.

6. The district court rejected these arguments on motion for summary judgment. 676 F.Supp. at 203 (1987).

7. The district court's factual findings as to the fee request were not clearly erroneous. Thus, we reject appellants's challenge. Also, there is no exhaustion requirement under Title VII. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461,

469, 102 S.Ct. 1883, 1891, 72 L.Ed.2d 262 (1982) ("[n]o provision of Title VII requires claimants to pursue in state court an unfavorable state administrative action"). Accordingly, we reject appellant's contention that Jones failed to exhaust available state remedies on the fee issue.

8. Justice Blackmun's majority opinion was joined by Chief Justice Burger (except as to footnote 6), and in its entirety by Justices Brennan, Stewart, Marshall and Powell. Justices White and Rehnquist dissented for the reasons given by Judge Mulligan in dissent below. Judge Mulligan believed the issues presented to be the availability of attorney's fees not provid-

tice Stevens concurred separately, arguing that the question as framed by the majority was not reached because Carey had originally filed a claim seeking adjudication on the merits. *Id.* at 71, 100 S.Ct. at 2034–2035.

Relying on Justice Stevens' analysis, the Bank urges us to distinguish this matter from *Carey* because Jones sought only attorney's fees. This is, however, a distinction without a difference. The analysis of Title VII offered by the majority in *Carey* requires a decision in favor of Jones.

## A. Title VII

Section 706(k) of the Civil Rights Act of 1964 allows courts to award attorney's fees to prevailing parties "[i]n any *action or proceeding* * * *." 78 Stat. 261, 42 U.S.C. § 2000e-5(k) (emphasis added). In *Carey,* the Court concluded that the inclusion of "proceedings" reflected "an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings." 447 U.S. at 61. Further, Title VII uses the term "proceedings" to describe the state action desired under the system of deferrals, suggesting that state administrative proceedings were adequate triggers for attorney's fees. *Carey,* 447 U.S. at 62, 100 S.Ct. at 2030 (examining section 706(c)). In so construing the attorney's fee provision of section 706(k), the Court drew on legislative intent and its own precedent interpreting Title VII.

The co-author of the 1964 Civil Rights Act, Senator Hubert H. Humphrey, explained that the award of attorney's fees under section 706(k) was designed to "make it easier for a plaintiff of limited means to bring a meritorious suit." Senate Debate on the Civil Rights Act of 1964, 110 Cong.Rec. 12724 (1964). The Supreme Court considered the remarks of Senator Humphrey and others when it elected to constrain the judicial discretion bestowed in section 706(k) by requiring that "a prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances." *Christiansburg Garment Co. v.*

*EEOC,* 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978). The Court based its decision in *Christiansburg* on its longstanding view that Title VII must be interpreted in light of "the purposes which inform Title VII." *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 417, 95 S.Ct. 2362, 2371, 45 L.Ed. 280 (considering the availability of back pay under section 706(g)). The Court in *Albemarle* concluded that Congress' purpose in vesting courts with discretionary remedies was "to make possible the 'fashion[ing of] the most complete relief possible." *Id.* at 421, 95 S.Ct. at 2373 (quoting the analysis introduced by Senator Williams to accompany the Conference Committee Report on the 1972 Amendments, 118 Cong.Rec. 7168 (1972)). In fashioning relief, courts have "not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle,* 422 U.S. at 418, 95 S.Ct. at 2372 (quoting *Louisiana v. United States,* 380 U.S. 145, 154, 85 S.Ct. 817, 822–823, 13 L.Ed.2d 709 (1965)).

To further the dual aims of redress and deterrence, Title VII has sought to coordinate the actions of state agencies, federal agencies, state courts and federal courts in an effort to provide victims of discrimination " 'complete justice' and 'necessary relief'." *Albemarle, supra* at 418, 95 S.Ct. at 2372.

> Congress envisioned that Title VII's procedures and remedies would "mes[h] nicely, logically, and coherently with the State and city legislation," and that remedying employment discrimination would be an area in which "[t]he Federal Government and the State governments could cooperate effectively." 110 Cong. Rec. 7205 (1964) (quoting remarks of Sen. Clark).

*Carey,* 447 U.S. at 63–64, 100 S.Ct. at 2030–2031.

Thus, although claims may initially be deferred to state agencies, the EEOC retains concurrent jurisdiction and federal courts

ed for under state law and the adequacy of

Division counsel. 598 F.2d at 1260–1261.

retain the "'ultimate authority' to secure compliance with Title VII * * *." *Id.* at 64, 100 S.Ct. at 2031 (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44–45, 94 S.Ct. 1011, 1017–1018, 39 L.Ed.2d 147 (1974)).[9]

The *Carey* majority thought it would be anomalous to deny fees to a party who prevailed before a state tribunal, while allowing fees to a party who was only partly successful in state proceedings and hence proceeded on the merits in federal court. *Id.* at 66, 100 S.Ct. at 2032. In support of its conclusion that a suit could be sustained in federal court solely for fees, the Court explained:

> Title VII explicitly leaves the States free, and indeed encourages them, to exercise their regulatory power over discriminatory employment practices. Title VII merely provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums. § 706(f)(1). *ONE ASPECT OF COMPLETE RELIEF IS AN AWARD OF ATTORNEY'S FEES, WHICH CONGRESS CONSIDERED NECESSARY FOR THE FULFILLMENT OF FEDERAL GOALS.*

*Id.* at 67–68, 100 S.Ct. at 2032–2033 (emphasis added).

### B. The Present Case

While this case may differ from *Carey* because the plaintiff did not seek to relitigate the merits in federal court, nevertheless, all of the policy arguments in *Carey* and the themes which pervade Title VII interpretation command the same conclusion.

The award of attorney's fees is necessary to aid the bringing of "meritorious claims." Here, Jones had no choice but to seek relief before a state agency. The Agency awarded her the maximum relief possible under state law, declining to consider her request for attorney's fees only because they were unavailable under state law. We find no indication that Congress intended Title VII, by its system of state deferral, to leave the execution of Title VII's goals exclusively to the judgment of state officials. Rather, as the Court in *Carey* reasoned, federal courts are to operate as residual guarantors of Title VII rights. This policy is so strong that the Court in *Carey* nearly anticipated these facts in giving an example of the reach of its reasoning. It stated:

> For example, if state proceedings result in an injunction in favor of the complainant, but no award for backpay because state law does not authorize it, the complainant may proceed in federal court to "supplement" the state remedy. The state law which fails to authorize backpay has not been pre-empted.

*Carey*, 447 U.S. at 68, 100 S.Ct. at 2033.

In a dissent that attracted the support of two Supreme Court Justices, Judge Mulligan took a contrary view. He argued that comity concerns made "fundamental" the proposition that state law determine the remuneration available for legal work on state claims. 598 F.2d at 1261. This proposition, however, fails to recognize the extent to which Title VII and state law are meant to be complementary. It would be a mistake to view state proceedings as somehow separate. This victim was required to pursue relief before state agencies first.[10] In addition, Title VII was passed pursuant to congressional authority under section 5

---

**9.** As the Court stated in Carey:

> It is clear from this scheme of interrelated and complementary state and federal enforcement that Congress viewed proceedings before the EEOC and in federal court as supplements to available state remedies for employment discrimination. Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief. *See Alexander v. Gardner–Denver * * *.*

447 U.S. at 65, 100 S.Ct. at 2031–2032.

**10.** Mandatory deferral distinguishes the present case from actions which arise under other civil rights laws. *See North Carolina Dep't of Transportation v. Crest Street Community Council, Inc.*, 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188, 196–197 (1986) (distinguishing § 1988 on the basis of plain statutory language and legislative history); *Donnell Counsel v. Dow, et al.*, 849 F.2d 731 (2nd Cir.1988); *Latino Project, Inc. v. City of Camden*, 701 F.2d 262 (3d Cir.1983); *Horacek v. Thone*, 710 F.2d 496 (8th Cir.1983).

of the fourteenth amendment. *See Carey*, 447 U.S. at 67, 100 S.Ct. at 2032–2033 (private employer). Therefore, even if in conflict, federal law would control. *Id.* Here, no conflict is present because South Dakota law does not attempt to preclude awards of attorney's fees under federal law.

■ Jones was not afforded complete relief by the state Agency. Absent a separate award for attorney's fees, her damages, carefully calculated to restore her to her expected position but for the Bank's discrimination, would be divided with her counsel. (Counsel was retained with the promise of a fee equal to a proportion of money damages if recovered.) The absence of a separate award for fees would discourage victims from seeking relief or pursuing their claims to rightful conclusions. While a Title VII defendant has the right to pursue all lawful and valid claims, delay and continued proceedings pressure a victim to either forego representation or to settle quickly on the employer's terms. For this reason, attorney's fees awards are essential to the aims of Title VII.

## II. *Right-to-Sue Letter*

■ Despite the absence of prejudice, the Bank argues that Jones' failure to obtain a right-to-sue letter requires dismissal because it is a jurisdictional prerequisite to the filing of a complaint in federal court. They rely on our decision in *Sedlacek v. Hach*, 752 F.2d 333 (8th Cir.1985). We hold that the failure to obtain a right-to-sue letter prior to the commencement of a suit is a curable defect.

In *Sedlacek*, the district court dismissed the plaintiff's complaint, believing that it lacked subject matter jurisdiction because the EEOC had not yet investigated or attempted to conciliate Sedlacek's claim. In reversing, we cited in passing the statements from *McDonnell–Douglas* that:

> the only jurisdictional prerequisites to a federal action under Title VII are (1) timely filing charges of employment discrimination with the Commission and (2) receiving and acting upon the Commission's statutory notice of the right to sue. *McDonnell–Douglas Corp. v.*

*Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973).

*Sedlacek*, 752 F.2d at 335.

Failure to obtain a right-to-sue letter prior to the commencement of a claim in federal court was not at issue in *Sedlacek*.

The Fourth Circuit, in scrutinizing the same language from *McDonnell–Douglas*, concluded: "[T]he Court referred to the timely filing of administrative charges and receipt of a 'right-to-sue' letter as jurisdictional prerequisites only by way of rejecting arguments which would have imposed additional jurisdictional preconditions." *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir.1982) (footnote omitted); *see also, Pinkard v. Pullman–Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1215 (5th Cir.1982) (right-to-sue letter is a condition precedent, rather than a jurisdictional prerequisite, and can be cured after filing a suit).

■ The Supreme Court later returned to reconsider the *McDonnell–Douglas* statements in *Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In *Zipes*, the plaintiff failed to file an EEOC charge in a timely manner. The Court held that the filing of a timely charge of discrimination was not a jurisdictional prerequisite to a federal court suit, but instead operated akin to a statute of limitations. *Id.* at 393, 102 S.Ct. at 1132. Therefore, the failure to file in a timely manner was held subject to waiver, estoppel and equitable tolling. The Court reasoned that in doing so, "we honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." *Id.* at 398, 102 S.Ct. at 1135.

Because a timely filing with the EEOC necessarily precedes the return of a right-to-sue notice from the EEOC, such notices must also be curable. *See Williams v. Washington Metropolitan Area Transit Authority, et al.*, 721 F.2d 1412, 1418 n. 12 (D.C.Cir.1983). We hold that receipt of a right-to-sue notice is a condition precedent to a filing of a Title VII claim, curable

**500**

after the action has commenced. *Accord Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 358 (3d Cir.1984); *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1351 (9th Cir.1984); *Fouche v. Jekyll Island–State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir.1984); *Perdue, supra; Pinkard, supra.*

## CONCLUSION

In 1964, Congress invoked federal power to provide basic civil rights for all Americans. Congress did not intend to leave such a Herculean task to the states alone. Title VII provides intimately related rights and remedies designed to free our country from persistent discrimination in employment. Where federal law offers more comprehensive relief than state law, those claimants who possess meritorious claims under Title VII are also entitled to the full range of federal remedies. We affirm.