**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KELLY JEAN CHRIS,
Plaintiff-Appellant,

v.

No. 99-2140

GEORGE J. TENET, Director, Central
Intelligence Agency,
Defendant-Appellee.

KELLY JEAN CHRIS,
Plaintiff-Appellant,

v.

No. 99-2376

GEORGE J. TENET, Director, Central
Intelligence Agency,
Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-99-494-A, CA-99-1231-A)

Argued: May 3, 2000

Decided: July 27, 2000

Before WIDENER and MOTZ, Circuit Judges, and
Frank W. BULLOCK, Jr., United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Bullock wrote the opinion, in
which Judge Widener and Judge Motz joined.

**COUNSEL**

**ARGUED:** Pamela Bruce Stuart, Washington, D.C., for Appellant. Charles Wylie Scarborough, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** David W. Ogden, Acting Assistant Attorney General, Helen F. Fahey, United States Attorney, Rachel C. Ballow, Assistant United States Attorney, Marleigh D. Dover, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

BULLOCK, District Judge:

The jurisdictional provision of Title VII of the Civil Rights Act of 1964 provides that, "Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under[Title VII]." 42 U.S.C. § 2000e-5(f)(3). We are asked to decide in this case whether the phrase "actions brought under [Title VII]," as used in 42 U.S.C. § 2000e-5(f)(3), includes an action brought for the sole purpose of recovering attorney's fees and costs for work performed by counsel during administrative proceedings under Title VII that resulted in the settlement, prior to the filing of a judicial complaint, of all of Plaintiff's Title VII claims. The district court held that the phrase "actions brought under [Title VII]" referred only to legal proceedings instituted to enforce substantive rights guaranteed by Title VII and therefore the district court lacked subject matter jurisdiction over Plaintiff/Appellant's claims brought solely for attorney's fees and costs. See Chris v. Tenet, 57 F. Supp. 2d 330 (E.D. Va. 1999). For the reasons that follow, we affirm the district court's dismissal of the actions for lack of subject matter jurisdiction.

I.

This appeal arises from two separate actions which were consolidated on appeal. Plaintiff/Appellant, Kelly Jean Chris1 ("Chris"), is an

_____

**1** "Kelly Jean Chris" is Plaintiff/Appellant's pseudonym, assigned to her for purposes of these proceedings. Her real name cannot be disclosed

2

employee of the Central Intelligence Agency (the"CIA" or "Agency"). In 1993, Chris filed a claim for sex discrimination with the CIA's equal employment opportunity office (the"Agency's EEO office"). The Agency's EEO office investigated the allegations and issued a report on March 30, 1994. Thereafter, on May 2, 1994, Chris filed a charge with the Equal Employment Opportunity Commission (EEOC). In July 1994, while her first claim of sex discrimination was still pending, Chris filed a second claim of sex discrimination with the Agency's EEO office alleging that the CIA had initiated a criminal investigation into her relationship with a foreign national as a means of retaliating against her for filing her first complaint of sex discrimination. The Agency's EEO office investigated the second claim and issued a final report in March 1995. Following discovery, the parties entered into a confidential settlement agreement in June 1995 resolving both of Chris's complaints. The settlement agreement provided that in the event the parties did not reach an agreement on the amount of fees and costs due Chris, the CIA would pay her reasonable fees and costs in accordance with 29 C.F.R. § 1614.501(e).[2]

The parties did not reach an agreement on attorney's fees and costs, and Chris filed a petition with the CIA claiming a total of $79,484.00 in fees based on 256.4 hours of attorney work at $310.00 per hour. Chris also sought $1,920.84 in costs. The CIA issued its final decision on the fee petition on August 23, 1995, and awarded fees totaling $48,350.00, which represented a fee award of $250.00 per hour for 193.4 hours of attorney work, and costs totaling $1,237.32. Chris appealed the award to the EEOC. The EEOC issued a decision on July 19, 1996, awarding Chris fees of $59,510.00, which was based

_____

due to the classified nature of her government work.

**2** At the time of the settlement, the regulation provided, in relevant part, that:

> If the complainant, the [complainant's] representative, and the agency cannot reach an agreement on the amount of attorney's fees or costs . . . the agency shall issue a decision determining the amount of attorney's fees or costs due . . . . The decision shall include a notice of right to appeal to the EEOC . . . .

29 C.F.R. § 1614.501(e)(2)(ii)(A) (1995).

on an hourly rate of $275.00 and included an award for the time Chris's counsel spent representing her in an agency Office of Inspector General investigation, as well as an award for the time Chris's counsel expended pursuing her appeal to the EEOC on the fee petition matter. The EEOC also increased the award of costs to $1,534.26. Both Chris and the CIA requested that the EEOC reconsider its decision. The EEOC agreed to reconsider its decision, and on January 7, 1998, the EEOC lowered the fee award to $56,593.00, but increased the award of costs to $1,582.26. In its order of reconsideration, the EEOC advised Chris that "the decision [was] final, and there [was] no further right of administrative appeal from the[EEOC's] decision." (J.A. at 35). The EEOC also advised Chris that if the CIA failed to comply with the EEOC's decision, Chris could "petition the Commission for enforcement of the order," or "file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement." Id . In the alternative, the EEOC informed Chris that she had "the right to file a civil action on the underlying complaint," subject to statutory deadlines for such an action. Id.

Chris did not pursue one of those options, but filed a civil complaint in the United States District Court for the District of Columbia seeking the difference between the attorney's fees and costs awarded by the EEOC and the attorney's fees and costs she requested in her fee petition. Thereafter, the matter was transferred to the Eastern District of Virginia, and the CIA moved, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss Chris's complaint for lack of subject matter jurisdiction. On July 28, 1999, the district court granted the CIA's motion and dismissed Chris's complaint for lack of subject matter jurisdiction. Chris filed a timely notice of appeal.

While Chris's first two complaints of sex discrimination were pending, Chris filed a third complaint of discrimination with the Agency's EEO office in February 1995, alleging discriminatory reprisal. In September 1996, this claim was also resolved by way of a confidential settlement. This settlement agreement also provided that, in the event the parties did not reach an agreement on the amount of the attorney's fees due Chris, the CIA would pay her reasonable attorney's fees in accordance with 29 C.F.R. § 1614.501(e).**3** Pursuant to

_____

**3** The Agency did not dispute the amount of costs requested by Chris with regard to her third complaint of discrimination.

4

the settlement, Chris's counsel submitted a fee petition to the Agency requesting compensation for 6.6 hours of work at an hourly rate of $315.00. The CIA agreed to compensate Chris's counsel for all 6.6 hours of work, but concluded that the appropriate rate was $275.00 per hour. Chris appealed the CIA's decision to the EEOC, seeking the difference between the hourly rate claimed by Chris and the hourly rate awarded by the CIA. The EEOC determined that a reasonable hourly rate was $295.00, and in a decision dated July 15, 1999, the EEOC ordered the Agency to pay an additional $20.00 per hour for each of the 6.6 hours of attorney work claimed by Chris. As in its prior decision, the EEOC advised Chris that if the CIA failed to comply with the EEOC's decision, Chris could "petition the Commission for enforcement of the order," or "file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement." (J.A. at 81). In the alternative, the EEOC informed Chris that she had "the right to file a civil action on the underlying complaint," subject to statutory deadlines for such an action. Id.

On August 16, 1999, Chris filed a civil complaint in the Eastern District of Virginia seeking attorney's fees for work performed by her attorney while Chris's third claim of sex discrimination was in the administrative process. The Agency moved to dismiss the complaint, and the district court, on September 15, 1999, in an amended order, dismissed the complaint for the reasons stated in the July 28, 1999, memorandum opinion dismissing Chris's first complaint. Chris filed a timely notice of appeal and the second appeal was consolidated with Chris's first appeal.

II.

This court reviews de novo the district court's dismissal of Chris's claims for lack of subject matter jurisdiction. See Randall v. United States, 95 F.3d 339, 343 (4th Cir. 1996); see also United States v. Linney, 134 F.3d 274, 282 (4th Cir. 1998) (stating that issues of statutory construction are reviewed de novo). Chris contends that Title VII's grant of discretionary authority to federal courts to award attorney's fees and costs, see 42 U.S.C. § 2000e-5(k), is a substantive right that may be enforced in a suit, brought pursuant to 42 U.S.C. § 2000e-5(f)(3), solely for attorney's fees and costs following settlement of all

5

substantive claims during the course of the administrative process.**4**
Section 2000e-5(f)(3), the statutory provision granting subject matter
jurisdiction to federal district courts over actions brought under
Title VII, states, in relevant part, "Each United States district court
and each United States court of a place subject to the jurisdiction of
the United States shall have jurisdiction of actions brought under this
subchapter." 42 U.S.C. § 2000e-5(f)(3) (emphasis added). The issue
before the court is whether Chris's claims solely for attorney's fees
and costs are "actions brought under this subchapter," and thus within
the jurisdiction of the federal courts.**5**

Statutory interpretation necessarily begins with an analysis of the
language of the statute. See Landreth Timber Co. v. Landreth, 471
U.S. 681, 685 (1985). When analyzing the meaning of a statute, we
must first "determine whether the language at issue has a plain and
unambiguous meaning." Robinson v. Shell Oil Co., 519 U.S. 337, 340
(1997). If the language is plain and "the statutory scheme is coherent
and consistent," we need not inquire further. United States v. Ron
Pair Enters., Inc., 489 U.S. 235, 240-41 (1989)."[T]he sole function
of the courts is to enforce [the statute] according to its terms." Cami-
netti v. United States, 242 U.S. 470, 485 (1917). Our analysis of the
plainness or ambiguity of statutory language is guided "by reference
to the language itself, the specific context in which that language is

---

**4** An award of attorney's fees and costs under Title VII is authorized by
42 U.S.C. § 2000e-5(k), which states:

> In any action or proceeding under this subchapter the court, in
> its discretion, may allow the prevailing party, other than the
> Commission or the United States, a reasonable attorney's fee
> (including expert fees) as part of the costs, and the Commission
> and the United States shall be liable for costs the same as a pri-
> vate person.

42 U.S.C. § 2000e-5(k).
**5** Although Chris is an employee of the federal government, the ability
of federal employees to seek attorney's fees and costs is subject to the
same statutory provisions as private sector employees. See 42 U.S.C.
§ 2000e-16(d) (incorporating by reference 42 U.S.C. § 2000e-5(f)
through (k) to any "civil action[ ]" brought by a federal employee under
Title VII).

used, and the broader context of the statute as a whole." Robinson, 519 U.S. at 341.

With these principles in mind, we turn to the language of 42 U.S.C. § 20003-5(f)(3). "Action" is commonly understood to mean "a proceeding in a court of justice by which one demands or enforces one's right." Webster's Ninth New Collegiate Dictionary at 54 (1983); see also Black's Law Dictionary at 26 (deluxe 5th ed. 1979) (defining "action" as "[t]erm in its usual legal sense means a suit brought in a court"); Dictionary of Modern Legal Usage at 20 (2d ed. 1995) (defining "action" as "a mode of proceeding in court to enforce a private right, to redress or prevent a private wrong, or to punish a public offense"). "Under" is commonly understood to mean "subject to the authority, control, guidance, or instruction of." Webster's Ninth New Collegiate Dictionary at 1285; see also Black's Law Dictionary at 1368 (deluxe 5th ed. 1979) (defining "under" as meaning "according to"); Dictionary of Modern Legal Usage at 896 (2d ed. 1995) (stating that "under" "is preferable to pursuant to when the noun that follows refers to a . . . statute"). Finally, "this subchapter" refers to "Subchapter VI--Equal Employment Opportunities" of "Chapter 21--Civil Rights" of Title 42 of the United States Code, which is commonly referred to as Title VII. Thus, as the district court correctly concluded, the phrase "actions brought under this subchapter" refers to legal proceedings in a court of law to enforce the substantive rights guaranteed by Title VII, specifically the right to be free from employment discrimination on the basis of race, color, religion, sex, or national origin. See generally 42 U.S.C. § 2000e et seq.

This analysis of the meaning of "actions brought under this subchapter" is buttressed by the specific context in which the language appears. The first sentence of 42 U.S.C. § 2000e-5(f)(3) contains the jurisdictional grant to district courts over "actions brought under [Title VII]." 42 U.S.C. § 2000e-5(f)(3). The next sentence provides four alternatives as the proper venue for "such an action." Id. Pursuant to 42 U.S.C. § 2000e-5(f)(3), proper venue under Title VII may be where the unlawful employment practice is alleged to have been committed, where the employment records relevant to the alleged unlawful employment practice are maintained, where the aggrieved party would have worked absent the alleged unlawful employment practice, or, if the respondent is not found in any of the aforementioned places,

7

where the respondent has its principal office. See id. This structural design in which proper venue is controlled by facts associated with the alleged unlawful employment practice supports the conclusion that to be an "action[ ] brought under this subchapter" the civil action must involve a claim to remedy an unlawful employment practice, rather than contain only a single claim for attorney's fees and costs.

This conclusion is also supported by the manner in which other provisions of Title VII use the term "action" or its plural form. The terms "action" or "actions" appear throughout Title VII and are consistently used to refer to a court proceeding to prevent or remedy an unlawful employment practice. Also, as the district court noted:

> [A]fter the "action[ ] under this subchapter" is brought in federal court, it becomes the duty of the chief judge to designate "immediately" a judge to hear the case, and then that judge must set the case for hearing "at the earliest practicable date and [ ] cause the case to be in every way expedited." § 2000e-5(f)(4)-(f)(5). While these requirements are both sensible and understandable in connection with claims of employment discrimination or retaliation, they seem incongruous, if not inappropriate, when applied to an action solely for attorney's fees. It is doubtful that Congress intended to order expedition of claims brought solely to recover attorney's fees.

Chris, 57 F. Supp. 2d at 336.

Our consideration of the ordinary meaning of the language of 42 U.S.C. § 2000e-5(f)(3), as well as the context in which that language is used in 42 U.S.C. § 2000e-5(f)(3) and throughout Title VII, leads us to conclude that the meaning of "actions brought under this subchapter" is plain and unambiguous. The jurisdictional grant in 42 U.S.C. § 2000e-5(f)(3) refers to legal proceedings in a court of law to enforce the substantive rights guaranteed by Title VII, specifically the right to be free from employment discrimination on the basis of race, color, religion, sex, or national origin. Importantly, the result dictated by our interpretation of Section 2000e-5(f)(3) does not preclude a prevailing complainant from claiming fees and costs; rather, it merely

8

limits the complainant to claiming fees and costs solely in the forum where the substantive claims are ultimately resolved.

Interpreting Title VII as not permitting an action solely for attorney's fees and costs is also consistent with the statutory scheme of Title VII. Congress enacted Title VII "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974). To fulfill this goal, Congress created a dispute-resolution system that requires a person with a complaint of illegal discrimination, whether the complainant is a federal employee or a private-sector employee, to exhaust administrative remedies before bringing suit in federal court. See 42 U.S.C. § 2000e-16(c) (federal employees); 42 U.S.C. § 2000e-5(c),(f) (private sector employees). As the district court noted, Title VII, including the creation of the EEOC, reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes. See Chris, 57 F. Supp. 2d at 336. To interpret Section 2000e-5(f)(3) as permitting a suit solely for attorney's fees and costs incurred during the course of the Title VII administrative process would run counter to the congressional aim of quick, less formal, and less expensive resolution of employment disputes.

Chris argues that New York Gaslight Club, Inc. v. Carey, 447 U.S. 54 (1984), dictates that we conclude that Title VII permits a complaint solely for attorney's fees and costs. We disagree. In Carey, the Supreme Court held that Section 2000e-5(f) and Section 2000e-5(k) of Title VII "authorize a federal-court action to recover an award of attorney's fees for work done by the prevailing complainant in state proceedings to which the complainant was referred pursuant to the provisions of Title VII." Carey, 447 U.S. at 71. In reaching this conclusion, the majority stated:

> It would be anomalous to award fees to the complainant who is unsuccessful or only partially successful in obtaining state or local remedies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that federal policies be vindicated at the state or local level.

9

> Since it is clear that Congress intended to authorize fee awards for work done in administrative proceedings, we must conclude that [Title VII's] authorization of a civil suit in federal court encompasses a suit solely to obtain an award of attorney's fees for legal work done in state and local proceedings.

Id. at 66. The Carey majority went on to note that:

> We note that if fees were authorized only when the complainant found an independent reason for suing in federal court under Title VII, such a ground almost always could be found. . . . The existence of an incentive to get into federal court, such as the availability of a fee award, would ensure that almost all Title VII complainants would abandon state proceedings as soon as possible. This, however, would undermine Congress' intent to encourage full use of state remedies.

Id. at n.6.

Chris's reliance on Carey is misplaced for at least two reasons. First, the plaintiff in Carey, unlike Chris, initially sought relief in federal court on the merits of her claims in addition to her claim for attorney's fees. See id. at 58; see also id . at 71 (Stevens, J., concurring) (stating "this federal litigation was commenced in order to obtain relief . . . on the merits . . . and not simply to recover attorney's fees. Whether Congress intended to authorize a separate federal action solely to recover costs, including attorney's fees .. . is not only doubtful but is a question that is plainly not presented . . . ."). Second, in North Carolina Dep't of Transp. v. Crest St. Community Council, Inc., 479 U.S. 6 (1986), the Supreme Court re-examined the policy concerns noted in the Carey decision and dismissed them as "dicta" and "exaggerated." Crest St., 479 U.S. at 13-14.

Although Crest St. is not controlling on the issue before us, its reasoning is persuasive. In Crest St., the Crest Street Community Council (the "Community Council") filed an administrative complaint with the United States Department of Transportation alleging that a proposed plan by the North Carolina Department of Transportation to

10

extend a federally funded expressway through a predominantly black neighborhood in Durham, North Carolina, would violate Title VI of the Civil Rights Act of 1964. See id. at 9. The dispute was subsequently settled and, thereafter, the Community Council filed a separate complaint in federal court to recover fees pursuant to 42 U.S.C. § 1988(b).**6** See id. at 11.

The Supreme Court held that a suit for attorney's fees is not an action to enforce any of the civil rights laws listed in Section 1988, and therefore a federal court is not authorized to entertain a claim under Section 1988 solely for attorney's fees. See id. In concluding that to be eligible for an award of fees under Section 1988 a complainant must, at a minimum, file a judicial complaint, the Court emphasized that "an award of attorney's fees under § 1988 depends not only on the results obtained, but also on what actions were needed to achieve those results." Id. at 14. According to the Court, "It is entirely reasonable to limit the award of attorney's fees to those parties who, in order to obtain relief, found it necessary to file a complaint in court." Id. This reasoning carries equal force when applied to Chris's argument that Title VII's jurisdictional grant vests federal courts with jurisdiction over civil actions brought solely for attorney's fees and costs following settlement of all substantive claims during Title VII's administrative process. Because a suit solely for attorney's fees and costs is not an "action[ ] brought under [Title VII]," i.e., a suit to enforce the substantive protections of Title VII, federal courts lack subject matter jurisdiction over civil actions brought solely for attorney's fees and costs.

_____

**6** 42 U.S.C. § 1988(b) provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.], or Section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . ..

42 U.S.C. § 1988(b) (footnote omitted).

11

In reaching our conclusion, we are aware of the Eighth Circuit's contrary decision on a similar issue in Jones v. American State Bank, 857 F.2d 494 (8th Cir. 1988). In Jones, the Eighth Circuit stated that "the policy arguments" set forth in the Carey decision dictated a conclusion that Title VII authorized a suit solely for attorney's fees. See Jones, 857 F.2d at 498. The policy arguments relied upon by the Jones panel included the Supreme Court's belief in Carey that awarding attorney's fees only when a party found it necessary to file a complaint in court would be anomalous, see id., as well as the Supreme Court's belief that the absence of a separate award for attorney's fees would discourage complainants from seeking relief or pursuing their claims to their rightful conclusions because Title VII defendants would use delay and continued proceedings to pressure a complainant to settle, see id. at 499.

The Jones decision was written almost two years after the Supreme Court's decision in Crest St. expressly repudiated the first policy argument as "dicta" and "exaggerated." Crest St., 479 U.S. at 14. Furthermore, in Crest St. the Supreme Court also rejected the second policy argument on the grounds that awarding attorney's fees only when a party, in order to obtain relief, found it necessary to file a complaint "creates a legitimate incentive for potential civil rights defendants to resolve disputes expeditiously, rather than risk the attorney's fees liability connected to civil rights litigation." See id. at 15. The Eighth Circuit did not address the implications of the Crest St. decision and simply noted that the mandatory administrative deferral system of Title VII distinguished the Jones case from Crest St., which arose under Title VI and did not involve mandatory administrative deferral. See Jones, 875 F.2d at 498 n.10. We find this rationale unpersuasive. As an initial matter, the Supreme Court's discussion and disavowal of certain policy arguments underlying the Carey decision belie any assertion that the Crest St. decision is not relevant to attorney's fees issues under Title VII. Moreover, although Title VI, the statutory framework at issue in Crest St., does not impose mandatory participation in administrative proceedings, the absence of mandatory administrative procedures was never discussed by the Supreme Court as the basis of the Crest St. decision. Instead, the Supreme Court focused on the fact that a suit solely for attorney's fees under Section 1988 was not an action to enforce any of the civil rights laws listed in Section 1988, just as a suit solely for attorney's fees and costs is not an action

12

under Title VII. See Crest St., 479 U.S. at 15. For these reasons, we respectfully decline to follow the Eighth Circuit's holding in Jones.

III.

The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The jurisdictional grant in 42 U.S.C. § 2000e-5(f)(3) refers to legal proceedings in a court of law to enforce the substantive rights guaranteed by Title VII, specifically the right to be free from employment discrimination on the basis of race, color, religion, sex, or national origin. Accordingly, the jurisdictional grant of 42 U.S.C. § 2000e-5(f)(3) does not extend to an independent action solely for attorney's fees and costs incurred during the course of the Title VII administrative process.[7] The orders of the district court are therefore

AFFIRMED.

_____

[7] Because we conclude that the district court lacked subject matter jurisdiction under 42 U.S.C. § 2000e-5(f)(3), we need not address the CIA's alternative argument that Chris, upon agreeing that any fee dispute would be resolved according to 29 C.F.R. § 1614.501(e), waived any right to seek attorney's fees and costs in federal court.