Marty BACKUS, Plaintiff,

v.

MENA NEWSPAPERS, INC., Waldron
Newspapers, Inc., and Lancaster
Management Inc., Defendants.

No. 02–2064.

United States District Court, W.D.
Arkansas, Ft. Smith Division.

Sept. 25, 2002.

Joe D. Byars, Jr., Christian & Byars, Fort Smith, AR, for plaintiff.

Matthew Salada, Zinser Law Firm, P.C., Nashville, TN, Daniel B. Thrailkill, Page, Thrailkill and McDaniel, Menz, AR, for defendants.

### *ORDER*

DAWSON, District Judge.

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Arkansas Civil Rights Act (ACRA), Ark.Code Ann. § 16–123–101, *et seq.* Plaintiff alleges that Defendants terminated him from his position as publisher of Waldron Newspapers, Inc. (hereinafter "WNI") and otherwise discriminated against him with respect to the terms, conditions and privileges of his employment on the basis of religion. Plaintiff also alleges that his termination was in retaliation for his having reported possible OSHA and copyright violations. (Doc. 1.)

Currently before the Court is Defendants' joint motion to dismiss or, in the alternative, motion for summary judgment. (Doc. 26.) Defendants have also filed a joint motion for a protective order, requesting that discovery be stayed pending the Court's ruling on their dispositive motion (Doc. 32), and a motion for leave to

file a reply to Plaintiff's response to the motion for a protective order (Doc. 42). Plaintiff has filed a "partial" response to Defendants' motion to dismiss/motion for summary judgment (Doc. 35) and has filed a motion for an extension of time to more fully respond should Plaintiff's partial response not suffice (Doc. 34). For the reasons stated below, Defendants' motion to dismiss or, in the alternative, motion for summary judgment, is DENIED and all other motions are DENIED as moot.

██ Preliminarily, the Court must address an argument made by Defendants that their motion to dismiss/motion for summary judgment should be considered as unopposed, as Plaintiff's partial response was untimely. (Doc. 39 at p. 10.) Under Rule 7.2(b) of the Local Rules of United States District Court for the Eastern and Western Districts of Arkansas, a party must respond to a motion within eleven days of the date of service. Under Rule 6(e) of the Federal Rules of Civil Procedure, three days are added to this period. Defendants indicate that service occurred on August 22, 2002. Thus, Plaintiff's response was due on September 5, 2002, but it was not filed until September 10, 2002. Plaintiff no doubt encountered difficulty in drafting even a partial response to the motion to dismiss/motion for summary judgment given that Defendants refused to comply with any of Plaintiff's discovery requests or to even make the initial disclosures required by Federal Rule of Civil Procedure 26(a). Defendants also redacted in large part the exhibits offered in support of their own motion. The Court therefore finds good cause for granting Plaintiff an enlargement of time under Rule 6(b) and will consider Plaintiff's response as timely filed.

**\*Statute of Limitations**

██ In support of their motion to dismiss/motion for summary judgment,

Defendants argue that to the extent Plaintiff is alleging that his termination resulted from his failure to abide by Defendants "alleged 1996 decision to condition Plaintiff's continued employment on his adherence to certain rules touching on his personal and religious practices," the Plaintiff's action is barred by the 180–day limitations period for the filing of an EEOC charge. (Doc. 27 at p. 11.) The "alleged 1996 decision" referred to by Defendants is a memorandum dated November 16, 1996, advising Plaintiff to "consider [himself] on probation" and detailing "non-negotiable terms" with which Plaintiff had to "comply completely." These terms included the following:

(1) that Plaintiff abstain from alcohol;

(2) that he and his wife see a "Christian counselor" and to be sure that it was a "Christian counselor" because "[t]here are all kinds of wacko 'counselors' out there";

(3) that he "attend church weekly[,] without fail[,] no excuses";

(4) that he and his family have dinner together at least five times a week and start each meal with a prayer;

(5) that he and his wife "go to bed with each other every night without fail ... [and] besides saying goodnight to each other, the last thing [they] should do each night is say a prayer out loud together[ ] and start each morning the same, with a prayer out loud together";

(6) that he and his family limit their television watching to "some sports and some news, but that's it. No prime time. No soaps. No talk shows. No Letterman. And certainly no videos which depict violence or sex";

(7) that he read scripture daily;

(8) that he read the books "The Man in the Mirror" and "Go the Distance: The Making of a Promise Keeper"; and

(9) that he be "Christlike" in all he did. (Doc. 1 Attach.)

Defendants argue that if Plaintiff "does not allege that [his] termination was ... an effect of his failure to follow the terms of the 1996 memorandum, th[e]n the 1996 memorandum is certainly not relevant and is overly prejudicial to be introduced into evidence and considered in this case in determining whether Plaintiff's claims can survive summary judgment." (Doc. 27 at p. 11, n. 9)

Plaintiff responds that he has alleged subsequent discriminatory acts which occurred within 180 days prior to the filing of his EEOC charge on October 22, 2001. Specifically, Plaintiff alleges that in late May 2001, Lancaster Management, Inc. (hereinafter "LMI") advised Plaintiff that it did "not employ publishers that do not reflect the image of a Christian family" and gave Plaintiff the option of either purchasing WNI or resigning; on June 23, 2001, Plaintiff was terminated after refusing to do either.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002), the Supreme Court held that "[e]ach discrete discriminatory act starts a new clock for filing charges" and that while a claim based on prior acts may be time-barred, this does not "bar an employee from using the prior acts as background evidence in support of a timely claim." Defendants argue that this analysis only applies to hostile-work-environment claims. This is incorrect. The Supreme Court specifically stated that this analysis applies to discrete-discriminatory-act claims, such as Plaintiff's, and that a different analysis applies to hostile-work-environment claims. *Id.* Thus, Plaintiff's discriminatory-discharge claim is not barred by the statute of limitations and Defendants' prior alleged discriminatory acts, including the 1996 memorandum, are relevant as "background evidence" supporting this claim.

**\*Exhaustion of Administrative Remedies**

■ Defendants also argue that Plaintiff failed to exhaust his administrative remedies, as he failed to wait 180 days after filing his EEOC charge on October 22, 2001, before filing the instant action on March 18, 2002. Plaintiff responds that he received a right-to-sue letter on December 21, 2001, that required him to file suit within 90 days.

Title VII imposes a 180–day waiting period from the time EEOC charges are filed until the time the EEOC must either commence an action on the complainant's behalf or issue a right-to-sue letter to the complainant. The complainant has 90 days from the issuance of a right-to-sue letter to bring suit in federal court. *See* 42 U.S.C. § 2000e–5(f)(1). An EEOC regulation permits the early issuance of right-to-sue letters. *See* 29 C.F.R. § 1601.28(a)(2). Defendants argue that this regulation is invalid.

While one circuit court has declared the regulation invalid, *see Martini v. Federal Nat'l Mtg. Ass'n*, 178 F.3d 1336, 1347 (D.C.Cir.1999), it appears that the majority of the circuits that have addressed the issue have upheld the regulation and have permitted a suit to be filed in district court based on an early right-to-sue letter, *see Walker v. United Parcel Serv.*, 240 F.3d 1268, 1274 (10th Cir.2001); *Sims v. MacMillan*, 22 F.3d 1059, 1060 (11th Cir.1994); *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir.1984). The Eighth Circuit has not addressed the issue, but the Court is convinced that it would follow the majority view based on the approval it has demon-

strated in allowing premature Title VII suits to proceed. *See, e.g., Jones v. American State Bank,* 857 F.2d 494, 499–500 (8th Cir.1988) (failure to obtain right-to-sue letter prior to commencement of suit is a curable defect, cured by subsequent receipt of right-to-sue letter). Accordingly, the Court finds that Plaintiff exhausted his administrative remedies.

**\*Covered Employer under Title VII**

■ Title VII only applies to employers with fifteen or more employees, *see* 42 U.S.C. § 2000e(b), and ACRA only applies to employers with nine or more employees, *see* Ark.Code Ann. § 16–123–102(5). Defendants appear to maintain that WNI employed no more than eight people in June 2001 when Plaintiff was terminated as its publisher; that Mena Newspapers, Inc. (hereinafter "MNI"), where Plaintiff also served as publisher from January 1998 to May 2001, employed no more than eight people; and that LMI employed fewer than fifteen people.[1] Defendants argue that WNI and MNI are separate entities and that LMI is also a separate entity that has a written management contract with WNI and MNI and other newspaper publishing companies to perform limited administrative work and the hiring and firing of the companies' publishers. Defendants contend, inter alia, that the three entities maintain separate bank accounts, payrolls, and financial records and that LMI provides "limited administrative oversight of publishers in various corporations around the country, while not being involved in the production of any products." (Doc. 28 at p. 6–7.)

Plaintiff responds that LMI, WNI, and MNI should be considered as a single employer and as such they have the requisite number of employees. Plaintiff submits an affidavit and other evidence establishing the following. LMI and MNI were owned solely by Charles Lancaster and James Lancaster, Jr., at the time of Plaintiff's discharge, and, other than the Lancasters, the only other shareholder of WNI was Plaintiff. The Lancasters, along with Plaintiff and one other individual, served on the board of directors for both WNI and MNI. Further, LMI exercised control over WNI and MNI through regular budget meetings and audits; LMI required WNI and MNI to submit weekly financial reports and monthly profit and loss statements; LMI required payments for management fees and aircraft use fees; LMI was involved in establishing WNI's and MNI's budgets and was also involved in establishing the hours and pay-rates of employees; the health benefits of all employees of WNI and MNI were consolidated with the group policy of LMI, and WNI and MNI submitted their health-insurance premiums directly to LMI; and WNI and MNI were on the same slander and libel insurance policy.

■ In *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 391–92 (8th Cir.1977), the Eighth Circuit observed that the definition of "employer" under Title VII should be given a liberal construction and held that the factors to be considered in determining whether to treat two entities as one employer are: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. All of these factors are present with regard to WNI, MNI, and LMI. Further, other courts have applied these same factors and have held that the critical question to be answered is: "What entity made

---

1. In their "Uncontested Statement of Facts," Defendants state that WNI and *LMI* employed fewer than eight people, and then go on to state that *LMI* employed fewer than fifteen people. (Doc. 28 at p. 6.) The Court assumes that Defendants meant to state that the WNI and *MNI,* not *LMI,* employed fewer than eight people.

the final decision regarding employment matters related to the person claiming discrimination?" *Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir.2002). LMI admits that in was responsible for the hiring and firing of WNI's and MNI's publishers. The Court concludes that the three entities should be treated as one and that together they have a sufficient number of employees to satisfy the requirements of Title VII and ACRA.

## *Merits of Plaintiff's Religious–Discrimination Claim

Defendants argue that there are "three distinct types of religious discrimination: traditional religious discrimination (disparate impact), failure to accommodat[e] religious beliefs, and/or religious harassment." (Doc. 27 at p. 32.) Defendants contend that all three types of religious-discrimination claims require Plaintiff to establish that he held sincere religious beliefs of which Defendants knew and discriminated against. Defendants argue that Plaintiff's religious-discrimination claim fails because Plaintiff does not allege that he was discriminated against on the basis of *his own* religious beliefs; rather, Plaintiff alleges that Defendants discriminated against Plaintiff for failing to abide by *Defendants'* religious beliefs and principles. Defendants argue that, in any event, Plaintiff's termination had nothing to do with religion. Defendants maintain that Plaintiff was terminated because of "his poor work performance, his untrustworthiness and his irresponsibility, not his religious beliefs." (Doc. 27 at p. 49.)

■ Plaintiff responds that his religious-discrimination claim is a "straightforward disparate treatment" claim and that courts have recognized that an employer violates Title VII when an employee is fired because he did not hold the same religious beliefs as his supervisors. *See e.g., Shapolia v. Los Alamos Nat'l Labora-*

*tory,* 992 F.2d 1033, 1038 (10th Cir.1993) While it does not appear that the Eighth Circuit has addressed the issue, the Court believes that it would recognize such a claim and Plaintiff has presented sufficient evidence to establish a genuine issue of material fact as to whether Defendants' stated reasons for his termination were pretextual and whether his termination was actually based on his failure to abide by Defendants' religious beliefs and principles.

## *Merits of Plaintiff's Retaliation Claim

■ Defendants again maintain that Plaintiff was terminated for poor work performance, untrustworthiness and irresponsibility, and assert that the decision to terminate him was not in retaliation for his allegedly having reported possible OSHA or copyright violations. As reflected above, the Court finds a genuine issue of fact exists as to whether Defendant's stated reasons for Plaintiff's termination were pretextual.

## *Conclusion

Based on the foregoing, Defendants' motion to dismiss or, in the alternative, for summary judgment (Doc. 26) is hereby DENIED. Plaintiff's motion for an extension of time to more fully respond to the motion to dismiss/motion for summary judgment (Doc. 34) is denied as moot. Defendants' motion for a protective order (Doc. 32) and motion to file a reply to Plaintiff's response thereto (Doc. 42) are DENIED as moot. The parties are directed to make the initial disclosures required by Rule 26(a) of the Federal Rules of Civil Procedure by October 2, 2002. Defendants are directed to include in these disclosures unredacted copies of the exhibits attached to Defendant's motion to dismiss/motion for summary judgment. Plaintiff is directed to keep these docu-

ments confidential. All other deadlines set out in the Court's September 3, 2002 final scheduling order shall remain in effect.

The parties are directed to hereafter address only the legal issues and refrain from including in their pleadings personal references, comments, and arguments such as those made by defense counsel regarding Plaintiff's memory. This case remains scheduled for a jury trial on February 24, 2003.