Gale A. SMITH, Plaintiff,

v.

Paul O'NEILL, Secretary of the
Treasury, Defendant.

No. CIV.A. 02–1092(RMC).

United States District Court,
District of Columbia.

July 30, 2003.

Camilla Carolyn McKinney, Larry Elliot Klayman, Washington, DC, for Plaintiff.

Marina Utgoff Braswell, Daria Jean Zane, Michael A. Krasnow, U.S. Attorney's Office, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

COLLYER, District Judge.

Plaintiff Gale Smith, an African–American woman, filed this lawsuit under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, alleging that she has suffered from race and color discrimination and retaliation in connection with work assignments and performance appraisals that she received, as well as other job requirements of her position, at the Internal Revenue Service ("IRS" or "Agency"). She also alleges that she was subjected to a hostile work environment based on her race and color. Defendant Paul O'Neill is Secretary of the Treasury, of which the IRS is a component. He is being sued in his official capacity. Pending before the Court is the IRS's motion to dismiss or, in the alternative, for summary judgment, which Ms. Smith opposes. For the following reasons, the Court will grant the motion in part and deny it in part.

## I. BACKGROUND

Ms. Smith is a GS–14 Program Analyst in the Research Division of the IRS. In 1998, the IRS formed a new group within the Research Division, called the Earned Income Tax Credit ("EITC") group. At that time, Marguerite Kinney, a Caucasian woman, became chief of the EITC group. Under her were six employees, including Ms. Smith, three of whom were African–American and three of whom were Caucasian.

Ms. Smith claims that, from the beginning, Ms. Kinney assigned her "duties which were primarily administrative in nature." Compl. ¶ 25. Ms. Kinney allegedly refused to give any of the African–American employees in the EITC group "work commensurate with their position[s]," instead assigning all tasks "involving coordinating and managing research projects" to the Caucasian employees. *Id.* ¶ 18. Ms. Smith further asserts that the African–American employees in the group were subjected to harassment and repeated verbal abuse.

In November 1999, Ms. Smith received an overall rating of "Fully Successful" on her performance appraisal, which she contends was "significantly lower" than those she had received earlier in her career. *Id.*

¶ 34. In May 2000, she requested four days of leave, but was granted only two days by Ms. Kinney. According to Ms. Smith, three other employees had been granted leave for this same time. While out on leave, Ms. Smith again requested the additional two days off and Ms. Kinney granted her an additional one-half day. Although she was to report back to work at noon on May 18, 2003, Ms. Smith did not return to work until the following day. Upon her return, she was questioned by Ms. Kinney and directed to write a memorandum explaining her absence.

In June 2000, five of the EITC group employees, including Ms. Smith, sent a memorandum to Jim Alzheimer, Director of the Research Division, complaining about Ms. Kinney's alleged treatment of her subordinates and the hostile work environment she allegedly created. Because of their problems with Ms. Kinney's management style, all five employees requested reassignment or detail away from her supervision.[1] It appears that nothing was done with this memorandum, however, as Ms. Kinney apparently was not informed of it.

Ms. Smith contacted an Equal Employment Opportunity ("EEO") counselor on July 12, 2000, and filed her first formal administrative complaint on September 2, 2000. This EEO complaint presented three concerns: (1) that Ms. Smith had not been assigned work commensurate with her position as a GS–14 Program Analyst; (2) that she had been asked to write a memorandum explaining her absence from the office after a leave request had been denied; and (3) that IRS management had not responded to the memorandum sent to Mr. Alzheimer. *See* Def.'s Mot. to Dismiss Ex. 6.

At the end of September 2000, Ms. Smith received an overall rating of "Met" on her annual performance evaluation. After learning of this rating in early December 2000, she again contacted an EEO counselor. Ms. Smith filed a second EEO complaint on January 20, 2001, alleging that she had received a lower rating on her September 2000 performance evaluation and was given an impractical budget assignment because of her race and in retaliation for filing her first EEO complaint.[2] Thereafter, Ms. Smith avers that the EEO counselor recommended she withdraw her

---

1. The issues were:
 - Unrealistic expectations regarding work hours and leave.
 - Does not respect input offered from analyst.
 - No room for creativity or growth.
 - Does not incorporate ideas and suggestions offered by staff.
 - Demeans staff in front of employees within the group and outside of the group.
 - All decisions of staff, indeterminate of weight, are questioned.
 - No actions can be taken by analyst on their own accord.
 - Is antagonistic to staff in pressure situations.
 - Displays attitudes that are detrimental to the group's confidence.
 - Displays attitudes that demoralize the group.
 - Hostile work environment that is not conducive to open communications.

 Def.'s Mot. to Dismiss or, in the Alt., for Summ. J. ("Def.'s Mot. to Dismiss") Ex. 5.

2. It is not entirely clear which of the two performance appraisals Ms. Smith felt was retaliatory. In her January 2001 EEO complaint, she states that she was retaliated against when Ms. Kinney gave her a rating of "fully successful rather than distinguished." Def.'s Mot. to Dismiss Ex. 7. However, because the performance appraisal in which she received a "Fully Successful" rating occurred prior to the filing of her *first* EEO complaint, that evaluation could not have constituted retaliation. Both parties refer to the September 2000 performance appraisal when discussing the January 2001 EEO complaint for retaliation; consequently, the Court interprets the facts in the same manner.

January 2001 EEO complaint because the allegations concerning her second performance appraisal would become made part of the first complaint investigation and consolidation would "expedite processing the case." Pl.'s Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp.") at 43. She accepted this advice and withdrew her second EEO complaint, signing a withdrawal form acknowledging that she understood she could "no longer file a complaint on the same issues." Def.'s Mot. to Dismiss Ex. 8.

## II. LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the plaintiff has properly stated a claim upon which relief can be granted. In reviewing such a motion, the complaint's factual allegations must be presumed true and all reasonable inferences drawn in the plaintiff's favor, although the Court need not "accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Even when a plaintiff has stated a claim, summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To be "material" and "genuine," a factual dispute must be capable of affecting the substantive outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–48, 106 S.Ct. 2505.

In the context of Title VII—absent direct evidence of discrimination—courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), when deciding a motion for summary judgment. Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a *prima facie* case.

[T]o state a prima facie claim of disparate treatment discrimination, the plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. For retaliation claims ... the prima facie requirements are slightly different. The plaintiff must show '1) that she engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two.' A common element required for discrimination and retaliation claims against federal employers, and private employers, is thus some form of legally cognizable adverse action by the employer.

*Brown v. Brody,* 199 F.3d 446, 452–53 (D.C.Cir.1999) (citations omitted). Should the plaintiff meet this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for

the employee's treatment. If the defendant is successful, the burden returns to the plaintiff to show by a preponderance of the evidence that the defendant's reason was merely a pretext for discrimination.

## III. ANALYSIS

### A. Motion to Dismiss

■ The IRS asks the Court to dismiss portions of this case based on Ms. Smith's alleged failure to exhaust her administrative remedies. Specifically, the Agency asserts that (1) Ms. Smith neglected to consult with an EEO counselor within forty-five days of the May 2000 leave incident and the November 1999 performance appraisal, and (2) she withdrew the January 2001 EEO complaint. In response, Ms. Smith argues that the Court should waive exhaustion requirements because the EEO counselor misinformed her of the consequences of withdrawing her second administrative complaint.

Prior to filing an employment discrimination lawsuit in federal court, a federal employee must contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory ...." 29 C.F.R. § 1614.105(a)(1). Ms. Smith presumably received her November 1999 performance appraisal in 1999 and—as far as can be determined from the complaint and the record—did not contact an EEO counselor until July 2000. Therefore, the Court will grant the IRS's motion to dismiss the allegations concerning her November 1999 "Fully Successful" rating.

■ The IRS also notes that Ms. Smith was directed to write a memorandum explaining her unapproved absence in May 2000 on the date she returned, May 19, 2000, and that she did not contact an EEO counselor about this issue until July 12, 2000, more than 60 days later. Although the EEOC's 45–day time limit may be

subject to equitable tolling, that doctrine will be applied "only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C.Cir.1988) (holding that the time limit set forth in 42 U.S.C. § 2000e–16(c) is non-jurisdictional and subject to equitable tolling). Because Ms. Smith has not responded to this argument in her opposition brief, the Court sees no reason to excuse her for failing to meet this timeliness requirement. Therefore, the Court will grant the IRS's motion to dismiss the allegations concerning the May 2000 leave incident.

The analysis concerning the issues raised in Ms. Smith's January 2001 EEO complaint—the September 2000 performance appraisal and assignment of the budget program—is slightly more complicated. The IRS argues that because she withdrew this complaint, Ms. Smith has failed to exhaust her administrative remedies. Consequently, the Agency asserts, Ms. Smith's retaliation claim should be dismissed for lack of jurisdiction.

■ Exhaustion requirements are analogous to a statute of limitations and are "subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *see Brown v. Marsh*, 777 F.2d 8, 14 (D.C.Cir.1985) ("Exhaustion under Title VII, like other procedural devices, should never be allowed to become so formidable a demand that it obscures the clear congressional purpose of 'rooting out ... every vestige of employment discrimination within the federal government.'" (quoting *President v. Vance*, 627 F.2d 353, 363 (D.C.Cir.1980))). Ms. Smith propounds that she would not have withdrawn her January 2001 EEO complaint but for the advice of the EEO counselor. Failure to comply with filing requirements because of "justifiable reli-

ance on the advice of another government officer" is one instance in which waiver of exhaustion requirements may be appropriate. *Jarrell v. United States Postal Service,* 753 F.2d 1088, 1092 (D.C.Cir.1985). *Kizas v. Webster,* 707 F.2d 524 (D.C.Cir. 1983), does not counsel otherwise. The *Kizas* plaintiffs failed to initiate *any* administrative process, while Ms. Smith filed a timely EEO complaint and withdrew it only on the erroneous advice of the EEO counselor.

*Reetz v. Jackson,* 176 F.R.D. 412 (D.D.C.1997), cited by the IRS, does not lead to a different conclusion. The plaintiff in *Reetz* contradicted her own previously sworn testimony in an attempt to create a genuine issue of fact and avoid summary judgment. Ms. Smith is not contradicting her own sworn testimony; she is proffering an explanation for why her signed withdrawal form was not an intentional or knowing waiver of her discrimination and retaliation claims concerning her evaluation in September 2000 and the budget assignment. The IRS has offered no evidence to rebut Ms. Smith's statements that the EEO counselor gave her bum advice.

Therefore, the Court invokes equitable principles and finds that Ms. Smith is excused from exhausting her administrative remedies as to her January 2001 EEO complaint for discrimination and retaliation.[3]

## B. Motion for Summary Judgment

Ms. Smith alleges that she was discriminated and retaliated against in the nature of the work assignments she received and that she has suffered from a hostile work environment in the EITC group.[4] Arguing that work assignments, good or bad, do not constitute adverse employment actions and that there is insufficient proof of a hostile work environment, the IRS seeks summary judgment on these claims.

### 1. Work Assignments

■ Ms. Smith is not claiming a specific instance in which her grade, pay or benefits were reduced, or a failure to promote or transfer. Her claim is that African–Americans working for Ms. Kinney received less professional assignments than Caucasians and that she, in particular, was treated worse than even her African–American colleagues. Other employees testified in deposition to the same effect. The IRS responds that only *adverse* employment actions are actionable under Title VII and that Ms. Smith can show no conduct on the part of the Agency that had "materially adverse consequences affecting [her] terms, conditions, or privileges of employment[.]" *Brown v. Brody,* 199 F.3d 446, 457 (D.C.Cir.1999).

■ "An employment decision does not rise to the level of an actionable adverse action ... unless there is a 'tangible change in the duties or working conditions constituting a material employment disadvantage." ' *Walker v. WMATA,* 102

---

3. Several courts have held that a plaintiff asserting a Title VII retaliation claim need not exhaust her administrative remedies prior to filing suit in federal court. *See Lofton v. Atwood,* 172 F.3d 920, 1998 WL 700155, at *1 (D.C.Cir.1998) (unpublished opinion); *Johnson v. Albright,* 992 F.Supp. 37, 39 (D.D.C. 1998); *Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir.1992); *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989).

4. As discussed previously, the Court will dismiss the allegations concerning the May 2000 leave incident for failure to exhaust administrative remedies. The Court also agrees with the IRS that, even if that matter had been timely pursued by Ms. Smith, the requirement that she explain in a written memorandum why she failed to return from leave as directed did not rise to the level of an actionable adverse employment action.

F.Supp.2d 24, 29 (D.D.C.2000) (quoting *Kilpatrick v. Riley*, 98 F.Supp.2d 9, 21 (D.D.C.2000)). "[C]hanges in assignments and work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C.Cir.1997). Moreover, "mere inconveniences and alteration of job responsibilities will not rise to the level of adverse action as a matter of law." *Weigert v. Georgetown Univ.*, 120 F.Supp.2d 1, 17 (D.D.C.2000).

Although these decisions state the general rule on this issue, the Court finds that Ms. Smith's allegations concerning the assignment of work projects—supported by the testimony of others—do rise to the level of actionable discrimination. In essence, Ms. Smith asserts that her career has been stalled, and her professional reputation tarnished, because her supervisor failed and refused to allow her to perform the kinds of duties someone of her grade and experience should have performed. The difference between work assignment A and work assignment B would not normally constitute an adverse employment action; however, a pattern of consistent assignments to support staff duties, rather than professional level duties, because of race or color could be adverse. Such conduct would have "materially adverse consequences affecting [Ms. Smith's] . . . privileges of employment." *Brown v. Brody*, 199 F.3d at 457.

There exists a genuine issue of material fact as to whether Ms. Kinney's assignment of administrative tasks to Ms. Smith and other African–Americans in the EITC group was pervasive enough to amount to a "material employment disadvantage." While the IRS contends that the "plaintiff had responsibilities and duties that were more than just filing, making phone calls, and performing other administrative tasks[,]" Def.'s Mot. to Dismiss at 12, Ms. Smith states that she was "essentially relegated to performing administrative work, such as taking notes, organizing paper work, and Xeroxing, and her tasks were not related to the technical, analytical, or management aspects of a project." Pl.'s Opp. at 31. Similarly, the facts giving rise to an inference of discrimination in connection with the distribution of work assignments are contested by the parties. For example, Ms. Smith maintains that, "[a]lthough the Agency attempts to paint Ms. Kinney as an 'equal opportunity' harasser, it is patently obvious, from the testimony of the employees, that Ms. Kinney harassed and was most hostile toward Ms. Smith and the other African American employees." *Id.* at 39. "[T]o survive summary judgment the plaintiff need only raise a genuine issue of material fact with respect to each element of the *McDonnell Douglas* framework." *Carney v. American Univ.*, 151 F.3d 1090, 1093 (D.C.Cir. 1998). The Court finds that Ms. Smith has established a *prima facie* case of discrimination and retaliation based on the alleged discriminatory assignment of administrative work projects to her.[5]

█ The IRS argues, in the alternative, that summary judgment should still be granted in its favor because there were legitimate, nondiscriminatory reasons for Ms. Kinney's decisions concerning work assignments. The Agency asserts that

---

5. One of the actions underlying Ms. Smith's retaliation claim is the assignment of a budget project to her. By itself, this work assignment probably would not constitute an adverse employment action; however, considered in conjunction with Ms. Smith's other allegations of discrimination, the Court believes that it is sufficient to form the basis for a retaliation claim.

"Ms. Kinney delegated the work assignments to EITC's analysts based on experience, background, and knowledge of the issues." Def.'s Mot. to Dismiss at 16. Apparently, Ms. Kinney considered Ms. Smith the " 'utility person' because of her flexibility and ability to handle a variety of tasks." Id. at 18. Ms. Smith counters that the IRS's proffered reasons are pretextual. With respect to "the Agency's assertion that each employee in the EITC group was best suited for the task for which he or she was assigned[, Ms. Smith contends that she] had significant experience managing research projects and had the most seniority in the Office of Research as an analyst." Pl.'s Opp. at 41. Moreover, she states that "any of the employees could have performed the administrative tasks assigned to [her]." Id.

The Court finds that there are contested facts concerning the work assignments so that summary judgment cannot be granted. Therefore, the Court will deny the IRS's motion for summary judgment on Ms. Smith's claims for discrimination and retaliation.

### 2. Hostile Work Environment

 A hostile work environment exists when "discriminatory intimidation, ridicule and insult" are "sufficiently severe or pervasive 'to alter the conditions of . . . employment and create an abusive working environment.' " Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive— is beyond Title VII's purview." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In determining whether allegations rise to the level of a hostile work environment, courts consider "the frequency of the discrimina-

tory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23, 114 S.Ct. 367.

The IRS moves for summary judgment on the grounds that Ms. Smith has not, and cannot, establish a prima facie case of harassment. Specifically, the Agency asserts that (1) the evidence shows that all EITC group members were treated the same by Ms. Kinney, and (2) the alleged incidents identified by Ms. Smith were not severe and pervasive. Ms. Smith does not respond to the merits of the IRS's argument; instead, she remarks that she does not seek damages on this claim, but "should be allowed to introduce evidence and seek discovery on those allegations." Pl.'s Opp. at 28 n. 5. She asserts that her hostile work environment claim is "necessary to provide the proper context to the discrimination and retaliation [she] and other African–Americans in the EITC [allegedly] faced." Id.

Ms. Smith failed to oppose the merits of the IRS's motion for summary judgment on her hostile work environment claim. It is not necessary to maintain an unsupportable claim of a hostile work environment in order to seek discovery on the alleged facts. See FED. R. CIV. P. 26(b)(1). The Court will grant the IRS's motion on this issue.

## IV. CONCLUSION

For these reasons, the Court will (1) grant the IRS's motion to dismiss the allegations concerning Ms. Smith's 1999 performance appraisal for failure to exhaust administrative remedies; (2) grant the IRS's motion to dismiss the allegations concerning the leave incident in May 2000 for failure to exhaust administrative remedies; (3) deny the IRS's motion to dismiss

the allegations arising from her January 2001 EEO complaint; (4) deny the IRS's motion for summary judgment on the allegations of discrimination and retaliation; and (5) grant the IRS's motion for summary judgment on the allegations of a hostile work environment. A separate order will accompany this memorandum opinion.

### *ORDER*

For the reasons stated in the memorandum opinion that accompanies this order, it is hereby

**ORDERED** that the IRS's motion to dismiss the allegations concerning Ms. Smith's 1999 performance appraisal for failure to exhaust administrative remedies is **GRANTED**. It is

**FURTHER ORDERED** that the IRS's motion to dismiss the allegations concerning the leave incident in May 2000 for failure to exhaust administrative remedies is **GRANTED**. It is

**FURTHER ORDERED** that the IRS's motion to dismiss the allegations arising from Ms. Smith's January 2001 EEO complaint is **DENIED**. It is

**FURTHER ORDERED** that the IRS's motion for summary judgment on the allegations of discrimination and retaliation is **DENIED**. It is

**FURTHER ORDERED** that the IRS's motion for summary judgment on the allegations of a hostile work environment is **GRANTED**.

**SO ORDERED.**