**Marian K. HANSSON, Plaintiff,**

v.

**Gale NORTON, Secretary of the Interior, Defendant.**

**No. CIV.A. 02–2028(JDB).**

United States District Court, District of Columbia.

March 30, 2004.

Charles W. Day, Jr., Gebhardt & Associates, Washington, Lenore Cooper Garon, Falls Church, VA, for Plaintiff.

Marina Utgoff Braswell, U.S. Attorney's Office for the District of Columbia, Washington, for Defendant.

## MEMORANDUM OPINION

BATES, District Judge.

Plaintiff Marian Hansson ("Hansson") seeks an award of attorneys' fees and costs incurred in arriving at a settlement of her discrimination complaint against the Department of the Interior. Her case poses a question that is as yet unresolved in this Circuit: whether a party who achieves a favorable administrative resolution of a complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 ("Title VII"), may bring an action in federal court for the sole purpose of recovering attorneys' fees and costs incurred in the administrative process. The Secretary of the Interior ("the Secretary") has moved to dismiss Hansson's complaint on the ground that the action does not state a substantive Title VII claim, and thus this Court lacks subject matter jurisdiction. In her cross-motion for summary judgment, Hansson argues that her suit is within the Court's jurisdiction as an "action brought under" Title VII, and that the fees and costs she seeks are reasonable and supported by ample documentation.

## BACKGROUND

Hansson was at all relevant times a curator of American Indian art at the Bureau of Indian Affairs, a subdivision of the Department of the Interior. She is sixty-one years old and of Kiowa ancestry. After consulting with counsel, in November 2001 she filed an informal Equal Employment Opportunity ("EEO") complaint with the Bureau of Indian Affairs, alleging that she had suffered and was suffering discrimination on the basis of her age and national origin. Pl.'s Stmt. ¶¶ 3–4. She filed a formal complaint through counsel on December 26, 2001, and additional informal complaints on January 24 and April 12, 2002. Beginning on January 31, 2002,

and for several months, Hansson's counsel negotiated with the EEO Director at the Bureau of Indian Affairs and others in an attempt to resolve Hansson's grievances.

The parties ultimately reached a settlement. A Resolution Agreement, signed on June 28, 2002, awarded Hansson substantially all the relief she sought, Pl.'s Mot. at 5–6, including reassignment to a different supervisor, an updated job description with specific assignments, specified office space and resources, expungement of a reprimand from her record, a new performance plan, and compensatory damages of $6,500 for "stress, humiliation, and emotional pain and suffering related to the incidents alleged in the resolved complaints of discrimination." Compl. Ex. 1 ¶ 8(1). It further provided:

> By executing this Resolution Agreement, Complainant withdraws and dismisses, with prejudice, her complaint of discrimination identified above, and any other allegation, complaint, grievance, or other action she has filed or could have filed and agrees not to institute, file or otherwise initiate or cause to be instituted, filed or initiated on her behalf, any complaint or other action, including civil court litigation, against the Agency, its bureaus, offices, agents or employees which has or could have been filed by her through the date of execution of this Resolution Agreement.

1. In relevant part, that regulation states:

   The provisions of this paragraph relating to the award of attorney's fees or costs shall apply to allegations of discrimination prohibited by Title VII and the Rehabilitation Act. In a decision or final action, the agency, administrative judge, or Commission may award the applicant or employee reasonable attorney's fees (including expert witness fees) and other costs incurred in the processing of the complaint .... (iv) Attorney's fees shall be paid for services performed by an attorney after the filing of a

*Id.* ¶ 5. In addition to resolving Hansson's formal and informal complaints, the Resolution Agreement included a fee shifting arrangement:

> The Agency shall pay reasonable attorney's fees and costs to Complainant's attorney in accordance with the EEOC regulations at 29 C.F.R. § 1614.501(e)[1] .... Complainant's attorney will file with the Agency a verified statement of attorney's fees and costs and supporting Affidavit within 30 days of the date of execution of this Resolution Agreement. (A preliminary statement was already submitted to the Agency on June 24, 2002.) The Agency will then have 60 days from the date of the attorney's filing within which to issue a decision on the claim for attorney's fees and costs, but will also have the right to negotiate an amount with the attorney at any time within the 60–day period. The Agency agrees to make any payment on this claim to the attorney within 90 days of the attorney's filing.

*Id.* ¶ 8(m). Finally, the Resolution Agreement set forth a procedure for resolving disputes:

> The parties agree that should the Agency fail to honor its obligations as set forth in this Resolution Agreement for any reason not attributed to acts or conduct by the Complainant, the provisions outlined in 29 C.F.R. § 1614.504[2]

written complaint ... except that fees are allowable for a reasonable period of time prior to the notification of representation for any services performed in reaching a determination to represent the complainant.

29 C.F.R § 1614.501(e)(1).

2. That provision, in turn, states:

   (a) Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties.... If the complainant believes that the agency

shall govern. If the Complainant believes that the Agency has failed to comply with the terms of the Resolution Agreement, the Complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the Complainant knew or should have known of the alleged noncompliance. The Complainant may request that the terms of the Resolution Agreement be specifically implemented or, alternatively, that the complaints be reinstated for further processing from the point processing ceased.

*Id.* ¶ 11.

Hansson's attorneys submitted an itemized statement of fees and costs totaling $37,077.94 on July 27, 2002. On September 12, 2002, the Secretary issued a final decision regarding attorneys' fees and costs, awarding Hansson $8,959.44. Compl. Ex. 2. The remaining $28,118.50 in submitted fees and costs was disallowed on several grounds. First, the Secretary declined to pay all fees submitted for services performed by one attorney and one law clerk because Hansson's documentation had allegedly failed to provide adequate evidence that either was associated with her counsel's law firm. *See id.* at 8. Second, noting that "fees are not compensable in connection with legal services performed on age discrimination claims and reprisal claims based on age discrimination claims," *id.* at 4 (citing *Palmer v. General Servs. Admin.*, 787 F.2d 300 (8th Cir. 1986)), the Secretary reduced by 50% the total fee award payable to Hansson's two principal attorneys. Hansson's proposed fee arrangement did not, said the Secretary, distinguish between the amount of time each attorney had spent on Hansson's age discrimination claims as opposed to her national-origin discrimination claims. Finally, the Secretary disallowed certain itemized fees for various reasons, including (1) that some fees were duplicative or excessive, (2) that some had been submitted for non-compensable pre-complaint activities, and (3) that some were accompanied by vague task summaries. *See id.* at 5–8.

The final decision letter indicated that Hansson had various appeal rights. On the one hand, she could appeal the final decision to the EEOC within thirty days, or within 180 days of the filing of her complaint. *Id.* at 9. If Hansson elected to appeal the decision to the EEOC, said the letter, she could ultimately seek review of the EEOC's decision in federal district court. *See id.* at 10. Alternatively, the letter provided that "[i]n lieu of an appeal to the [EEOC]," Hansson could "file a civil action in an appropriate United States District Court within ninety (90) calendar days of [her] receipt of the Commission

---

has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the [agency's] EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of [sic] settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased .... (b) The agency shall resolve the matter and respond to the complainant, in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or decision.... (c) .... If the Commission determines that the agency is not in compliance and the noncompliance is not attributable to acts or conduct of the complainant, it may order such compliance or it may order that the complaint be reinstated for further processing from the point processing ceased.

29 C.F.R. § 1614.504.

final order."[3] *Id.* at 10.

Rather than proceed with an EEOC appeal, Hansson filed this action on October 16, 2002, alleging that (1) the Secretary's final decision to pay less than one-fourth of Hansson's requested attorneys' fees was arbitrary, capricious, and in violation of 42 U.S.C. § 2000e–5(k) ("Section 706(k)"); (2) the Secretary's award of attorneys' fees is unreasonable in violation of the Resolution Agreement; and (3) the Secretary's final decision letter constituted an improper deferral of decision-making authority from the Bureau of Indian Affairs to the Office of the Secretary of the Interior.[4]

### *ANALYSIS*

#### A. Applicable Legal Standard

■■■ A motion to dismiss for lack of subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1) should not prevail unless a plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Kowal v. MCI Commun. Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *see also Beverly Enters., Inc. v. Herman*, 50 F.Supp.2d 7, 11 (D.D.C.1999). At this juncture, the plaintiff enjoys all favorable inferences that can be drawn from the alleged facts. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997). That notwithstanding, the Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," and the plaintiff bears the burden of pleading a claim within the Court's subject-matter jurisdiction. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C. 2001); *see also Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F.Supp.2d 15, 18 (D.D.C.1998). The Court may consider material other than the allegations of the complaint in determining whether it has

**3.** The Secretary now suggests that this instruction was erroneous (or at least incomplete) but would not in any event have been misleading to Hansson as she was competently represented. *See* Def.'s Mot. at 14–15. She insists that Hansson agreed to submit any disagreements regarding the Resolution Agreement to the administrative process outlined in 29 C.F.R. § 1614.504. The letter's discussion of Hansson's appeal rights was meant, the Secretary claims, only to outline the procedures Hansson could employ in the event that she first exhausted her administrative remedies and remained unsatisfied with the resolution of her substantive Title VII claim. *See Herron v. Veneman*, 305 F.Supp.2d 64 (D.D.C. 2004) (a party who alleges a federal agency's noncompliance with a Title VII settlement agreement must, prior to filing suit in federal court, exhaust her EEOC remedies). Hansson responds that the appeal rights language in the letter was misleading and indicative of bad faith, that exhaustion of the procedures in the Resolution Agreement would have been futile, and that, in any event, the agency's letter constituted a final agency decision susceptible to judicial review under 29 C.F.R. § 1614.407. Because the Court concludes that it lacks subject matter jurisdiction under Title VII to hear this action, it does not reach the Secretary's exhaustion argument or Hansson's colorable response that the Secretary's letter waived the exhaustion requirement. *Cf. Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091–92 (D.C.Cir.1985) (failure to contact an EEO counselor within prescribed period may be excused if it is the result of justified reliance on the advice of another government officer); *accord Smith v. O'Neill*, 277 F.Supp.2d 12, 18–19 (D.D.C.2003).

**4.** The basis for this contention—that a representative of the Bureau and not of the Department signed the Resolution Agreement—seems to be of little import. The Resolution Agreement is expressly between Hansson and the Secretary, Compl. Ex. 1, and the fact that it was signed by the Secretary's subordinate at the Bureau of Indian Affairs would not seem to implicate the validity of the agreement. *Id.* ¶ 1 ("By executing this Resolution Agreement, the parties hereby agree to resolve all of the issues raised in [Hansson's] pending complaints of discrimination ... against the U.S. Department of the Interior or any of its bureaus and offices.").

jurisdiction to hear the case. *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624–25 n. 3; *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C.Cir.1987); *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986).

**B. Discussion**

The Secretary contends that plaintiff's complaint should be dismissed because "the jurisdictional grant of 42 U.S.C. § 2000e–5(f)(3) does not extend to an independent action solely for attorneys' fees and costs incurred during the course of the Title VII administrative process." *Chris v. Tenet*, 221 F.3d 648, 655 (4th Cir.2000); *see also Braswell v. Montgomery County Dep't of Corrections and Rehab.*, 52 Fed. Appx. 617 (4th Cir. 2002); *Hale v. Marsh*, 808 F.2d 616, 620 (7th Cir.1986) (citing *Bohen v. City of East Chicago*, 799 F.2d 1180, 1184 (7th Cir.1986)); *cf. Paz v. Long Island R.R. Co.*, 954 F.Supp. 62, 63–65, *aff'd*, 128 F.3d 121 (2d Cir.1997) ("since [plaintiff] invokes Title VII only to recover attorney's fees incurred in a state proceeding without raising any claims 'under' the federal title, his complaint must be dismissed"); *but see Jones v. Am. State Bank*, 857 F.2d 494, 497 (8th Cir.1988); *Sullivan v. Commonwealth of Pennsylvania*, 663 F.2d 443 (3d Cir.1981). Noting the absence of controlling authority in this Circuit,[5] Hansson urges the Court to hold

that a Title VII complainant who has resolved her substantive grievances with a government agency in the administrative process may nonetheless bring an action in federal court solely to recover attorneys' fees. Pl.'s Opp'n at 12.

■ As always, the Court's inquiry begins with the language of the statute in question. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *Citizens Coal Council v. Norton*, 330 F.3d 478, 482 (D.C.Cir. 2003). If the language is plain and the statutory scheme is coherent and consistent, the Court's inquiry is at an end. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Here, two provisions of Title VII are germane to the Court's analysis. First, the provision granting subject matter jurisdiction to federal district courts to hear actions brought under Title VII states, in relevant part: "Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter." 42 U.S.C.2000e–5(f)(3) ("Section 706(f)(3)"). A second provision deals specifically with attorneys' fees:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party,[6] other

---

**5.** In *Manzoni v. Evans*, No. 01–cv–0189 (D.D.C. Sept. 16, 2002) (order denying motion to dismiss), Judge Sullivan expressly declined to follow the rule proposed by the Secretary in this case. However, in *Manzoni* the plaintiff asserted substantive claims under Title VII, as well as a claim for attorneys' fees. *See id.* at 4–5. Although the parties ultimately reached a resolution agreement, at the time the court rejected the Fourth Circuit's rule in *Chris*, 221 F.3d at 655, the plaintiff's complaint sought promotion, back pay, and modification of his performance record in addition to attorneys' fees. As the Secretary notes,

"had Judge Sullivan granted the government's motion to dismiss, the substantive claim sought to be advanced by the plaintiff in the amended complaint could not have proceeded." Def.'s Rep. at 8.

**6.** The Secretary does not contest Hansson's status as a "prevailing party" as it is settled that "a person may in some circumstances be a 'prevailing party' without having obtained a favorable final judgment or without formally obtaining relief." *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (settlement on the merits rendered

than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k) ("Section 706(k)").

As to Section 706(f)(3), the issue posed by this case is whether the phrase "actions brought under this subchapter" includes an action brought for the sole purpose of recovering attorneys' fees and costs for work performed in settling a Title VII administrative proceeding. An "action" is generally any "civil or criminal judicial proceeding," BLACK'S LAW DICTIONARY at 28 (deluxe 7th ed.1999), but is often understood to contain the notion that it is a proceeding brought to vindicate a right or redress a wrong. *See id.* ("An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.") (quoting 1 M. ESTEE, ESTEE'S PLEADINGS, PRACTICE, AND FORMS § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885)); WEBSTER'S THIRD NEW INT'L DICTIONARY at 21 (unabridged ed.1993) ("a legal proceeding by which one demands or enforces one's rights in a court of justice"). For the purpose of Section 706(f)(3), an action brought "under this subchapter" is one brought according to "Subchapter VI—Equal Employment Opportunities" of "Chapter 21—Civil Rights," of Title 42 of the United States Code. Subchapter VI is more commonly known as Title VII. Thus, the plain language of Section 706(f)(3) seems to indicate that "actions brought under this subchapter" refers to court proceedings to enforce the rights guaranteed, or redress the wrongs prohibited, by Title

VII. This is the analysis followed by the Fourth Circuit in *Chris*, 221 F.3d at 652.

A close reading of Section 706(k) supports this interpretation. The court, in its discretion, may award attorneys' fees *as part of the costs* of an action or proceeding under Title VII. "Costs" in this context may be alternatively defined as "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees" or "[t]he expenses of litigation, prosecution, or other legal transaction, esp[ecially] those allowed in favor of one party against the other." BLACK'S LAW DICTIONARY at 350 (deluxe 7th ed.1999). By specifying that attorneys' fees may be awarded as part of the costs of an action under Title VII, Section 706(k) implies that such fees form part of the ancillary relief which, in its discretion, the court may provide to the prevailing party in an action to enforce rights guaranteed by Title VII. *Cf. Employers Reinsurance Corp. v. Mid–Continent Cas. Co.*, 358 F.3d 757 (10th Cir.2004) ("the American Rule ... ordinarily bars the recovery of attorney fees by the prevailing party in litigation, on the theory that such fees are a cost of recovering damages, not damages in themselves"); *Motorola, Inc. v. Fed. Express Corp.*, 308 F.3d 995, 1007 (9th Cir.2002) ("We recognize that costs and attorney's fees are not 'damages'). In contrast, the plain words of Section 706(k) do not suggest that a Title VII plaintiff may bring a cause of action for attorneys' fees apart from her underlying grievance."

■ The statutory context in which Sections 706(f)(3) and 706(k) reside seems to confirm that an action brought solely to recover attorneys' fees is beyond the Court's Title VII subject matter jurisdiction. For instance, in addressing the

plaintiff a "prevailing party"); *Hanrahan v. Hampton*, 446 U.S. 754, 757, 100 S.Ct. 1987,

64 L.Ed.2d 670 (1980) (internal citations omitted); *see also Sullivan*, 663 F.2d at 447.

proper venue for an action brought under Title VII, Section 706(f)(3) specifies "the judicial district in the State in which the unlawful employment practice is alleged to have been committed, [ ] the judicial district in which the employment records relevant to such practice are maintained and administered, or [ ] the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(f)(3). This linkage of venue specifically to the alleged unlawful employment practices at issue would be somewhat out of harmony with Hansson's theory of Title VII jurisdiction. *See Chris,* 221 F.3d at 652. The operative facts in a case brought solely to recover attorneys' fees would likely not, and do not here, involve any facts related to the plaintiff's underlying claim of discrimination. Additionally, "the terms 'action' or 'actions' appear throughout Title VII and are consistently used to refer to a court proceeding to prevent or remedy an unlawful employment practice." *Id.* "There is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atlantic Cleaners & Dyers v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932).

This issue of an independent action for attorneys' fees under Title VII has been addressed by the courts of appeals, although not by the D.C. Circuit. Hansson directs the Court to several cases in which other circuits have effectively or explicitly concluded that an action like hers does in fact fall within Title VII's grant of subject matter jurisdiction. In *Jones,* 857 F.2d at 494–95, a Title VII plaintiff brought suit in federal court solely for attorneys' fees because she had proceeded exclusively before a South Dakota state agency, and attorneys' fees were not available to her under South Dakota law. A unanimous panel of the Eighth Circuit held that the plaintiff's

action before the state agency was a "proceeding" for purposes of Section 706(k), and that "the absence of a separate award for fees would discourage victims from seeking relief or pursuing their claims to rightful conclusions." *Id.* at 499. The inadequacy of state remedies available to the plaintiff weighed heavily in the analysis in *Jones.* The court stressed that "Title VII has sought to coordinate the actions of state agencies, federal agencies, state courts and federal courts in an effort to provide victims of discrimination 'complete justice and necessary relief,' " *id.* at 497 (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)), and therefore that failing to allow plaintiff to pursue attorneys' fees in federal court would contravene the overall purposes of Title VII. The court had no occasion to consider, as is the situation here, a plaintiff to whom other avenues of relief fully consistent with the statutory scheme of Title VII remained available.

In *Sullivan,* 663 F.2d at 446–47, while the plaintiff's substantive Title VII cause of action was pending before a district court, a parallel arbitration proceeding resulted in an award to the plaintiff of all relief she had sought except attorneys' fees. The plaintiff thereupon moved the district court for summary judgment as to her attorneys' fees pursuant to Section 706(k). The Third Circuit reversed the district court's denial of the plaintiff's motion, holding that the plaintiff was entitled to attorneys' fees because she was a "prevailing party" and because her Title VII suit was a material contributing factor in catalyzing her desired relief. *Id.* at 452. The Court reasoned that "if attorneys' fees compensating counsel for Title VII activities are to be awarded after a full trial in the district court, such fees for the same activities should similarly be awarded

when Title VII rights are vindicated through other means, such as, in this case, arbitration." *Id.*

The plaintiff in *Slade*, 952 F.2d at 361, brought a Title VII action for back wages and attorneys' fees in federal court, then voluntarily abandoned his back wages claim. The Tenth Circuit held that the district court continued to have subject matter jurisdiction over plaintiff's claim solely for attorneys' fees, but ultimately concluded that plaintiff was not a "prevailing party" under Section 706(k), and was thus not entitled to fees. *Id.* at 362. Again, the court lingered on the policy implications of failing to provide an avenue for the recovery of fees to Title VII plaintiffs. The court expressed concern that a contrary holding would incentivize hasty suits to circumvent the Title VII administrative process: "if fees were authorized only where plaintiff had grounds independent of those for attorney's fees to bring suit under Title VII, such independent grounds usually would not be difficult to find." *Id.* at 361 (citing *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 66 n. 6, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) ("*Gaslight*")).

Where, however, as here, a plaintiff has reached a favorable and complete administrative resolution of her Title VII claim and expressly disavowed any further liability of the agency, it is unlikely that the administrative process for resolving substantive claims will be circumvented. In this sense, Hansson's situation is factually much closer to that of the plaintiff in *Chris v. Tenet*. *See* 221 F.3d at 649. There, the Fourth Circuit held that a district court lacked jurisdiction to entertain a Title VII action solely for attorneys' fees for work performed during administrative proceedings that resulted in a settlement agreement prior to the filing of a judicial complaint. *Id.* at 654. The plaintiff had pursued her fee award through the EEOC process, and had been advised that she could file a civil action on her underlying complaint. Instead, like Hansson, she filed a civil complaint "seeking the difference between the attorney's fees and costs awarded by the EEOC and the attorney's fees and costs she requested in her fee petition." *Id.* at 650. Reasoning from the language and context of Section 706(f)(3) and the overall purposes of the EEOC mechanism, the court found that the suit was not an action "brought under" Title VII. *Id.* at 652–53.

*Chris* also analyzed a deeper tension relevant here: two Supreme Court cases bearing on the question invite this Court to follow divergent paths. In *Gaslight*, 447 U.S. at 61–62, 100 S.Ct. 2024, a civil rights plaintiff sued in federal court alleging that a defendant had violated Title VII by refusing to hire her on account of her race. She had previously filed and prevailed in administrative and judicial proceedings in the New York state system, winning an order directing the defendant to offer her employment and pay her back wages, but making no award of attorneys' fees. The Supreme Court found that plaintiff's state proceedings to enforce Title VII constituted an "action or proceeding" for purposes of Section 706(k). The Court rejected the claim that Section 706(k) authorized fee shifting only when "the complainant ultimately finds it necessary to sue in federal court to obtain relief other than attorney's fees," and observed that Section 706(k) authorized "a suit solely to obtain an award of attorney's fees for legal work done in state and local proceedings." *Id.* at 66, 100 S.Ct. 2024. Supporting this conclusion, the Court stated that, as a matter of policy,

> [i]t would be anomalous to award fees to the complainant who is unsuccessful or only partially successful in obtaining

state or local remedies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that federal policies be vindicated at the state or local level.

*Id.* However, in *Gaslight*, the plaintiff's action in fact sought substantive Title VII relief as well as attorneys' fees.[7] Hence, the Court's analysis focused on Section 706(k) rather than on Section 706(f)(3), because subject-matter jurisdiction existed at the outset due to the substantive claims asserted.

The Supreme Court had occasion to revisit this analysis in *North Carolina Dep't of Trans. v. Crest Street Community Council, Inc.*, 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986) (*"Crest Street"*). There, the Court held that the plain language and legislative history of 42 U.S.C. § 1988(b),[8] a provision very similar to Section 706(k),[9] did not authorize a federal court to award attorneys' fees except in an action to enforce the civil rights laws listed in the statute. *Id.* at 13, 107 S.Ct. 336. Citing *Gaslight* and *White v. New Hamp-*

*shire Dep't of Employment Security*, 455 U.S. 445, 451 n. 13, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), the Court "recognize[d] that dicta in opinions of this Court suggest that the authorization of attorneys' fee awards only by a court in an action to enforce the listed civil rights laws would be anomalous." *Crest Street*, 479 U.S. at 13–14, 107 S.Ct. 336.[10] However, the Court stated that "we now believe that the paradoxical nature of this result may have been exaggerated .... It is entirely reasonable to limit the award of attorney's fees to those parties who, in order to obtain relief, found it necessary to file a complaint in court." *Id.* at 14, 107 S.Ct. 336. The Court distanced itself from the prediction in *Gaslight* that parties might end-run state administrative proceedings by attaching underdeveloped substantive claims to actions for attorneys' fees, if only by doing so could they receive fee awards. "Upon reflection ... the better view ... [is] that 'competent counsel will be motivated by the interests of the client to pursue ... administrative remedies when they are available and counsel believes that they

---

7. Concurring in the judgment of the Court, Justice Stevens observed:

[T]his federal litigation was commenced in order to obtain relief for respondent on the merits of her basic dispute with petitioners, and not simply to recover attorney's fees. Whether Congress intended to authorize a separate federal action solely to recover costs, including attorney's fees, incurred in obtaining administrative relief ... is not only doubtful but is a question that is plainly not presented by this record.... A quite different question would be presented if, before any federal litigation were commenced, an aggrieved party had obtained complete relief in the administrative proceedings .... It is by no means clear that the statute ... would authorize a fee allowance when there is no need for litigation in the federal court to resolve the merits of the underlying dispute.

447 U.S. at 72, 100 S.Ct. 2024.

8. The statute provides, in relevant part: "In any action or proceeding to enforce a provi-

sion of sections 1977, 1977A, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–1983, 1985, 1986] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

9. Referring specifically to *Gaslight* and Section 706(k), both the majority and the dissent in *Crest Street* described the language of the two provisions as "identical." *See Crest Street*, 479 U.S. at 15, 107 S.Ct. 336 ("under identical language of Title VII"); *id.* at 20–21, 107 S.Ct. 336 ("Section 1988 employs phraseology virtually identical to that used in the Title VII fee provision").

10. Reinforcing the conclusion that the observation in *Gaslight* was dictum, the Court quoted Justice Stevens' concurrence in *Gaslight* to that effect. *Id.*

may prove successful.' An interpretation of § 1988 cannot be based on the assumption that 'an attorney would advise the client to forgo an available avenue of relief solely because § 1988 does not provide for attorney's fees ...'" *Id.* at 14–15, 107 S.Ct. 336 (quoting *Webb v. Dyer City Bd. of Educ.*, 471 U.S. 234, 241 n. 15, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985)).

Hansson seeks to drive a wedge between *Crest Street* and this case, arguing that the legislative histories of Section 1988 and Section 706(k) show the provisions to have different goals. It is true that one of Congress' primary purposes in enacting Section 706(k) was to "make it easier for a plaintiff of limited means to bring a meritorious suit." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (quoting 110 Cong. Rec. 12724 (1964) (remarks of Sen. Humphrey)); *see also Gaslight*, 447 U.S. at 63, 100 S.Ct. 2024 ("It is clear that Congress intended to facilitate the bringing of discrimination complaints."); *Albemarle*, 422 U.S. at 417, 95 S.Ct. 2362 (Congress' purpose in vesting the courts with discretionary remedies under Title VII was to allow them to fashion the most complete relief possible). But even in that light, the two fee provisions are not meaningfully distinguishable. As noted in a case upon which Hansson relies, "[t]he provision for counsel fees in 42 U.S.C. § 1988 was patterned upon the attorney's fees provision of 42 U.S.C. §§ 2000a–3(b) and [Section 706(k)]." *Slade*, 952 F.2d at 361 (citing *Hanrahan v. Hampton*, 446

U.S. 754, 758 n. 4, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)); *see also Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 n. 10 (4th Cir.1995) (the "standard for awarding attorney's fees under § 1988 is identical to that under Title VII"). Even the dissent in *Crest Street* rejected Hansson's contention that any divergence between the goals of the two statutes distinguishes the two fee provisions. *See* 479 U.S. at 20–21, 107 S.Ct. 336 ("Section 1988 employs phraseology virtually identical to that used in the Title VII fee provision ... and the relevant Committee Reports underline Congress' intent to model § 1988 after the Title VII fee provision.").

The Secretary's proposed interpretation of Section 706(k) is not burdensome to Title VII plaintiffs. Instead, it squares with another important principle of Title VII: encouraging the use of more expeditious administrative remedies wherever possible. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974);[11] *Chris*, 221 F.3d at 655; *cf. Crest Street*, 479 U.S. at 15, 107 S.Ct. 336 ("our holding creates a legitimate incentive for potential civil rights defendants to resolve disputes expeditiously, rather than risk the attorney's fees liability connected to civil rights litigation"). As Hansson's case demonstrates, negotiation between parties can yield success on the substance of Title VII complaints. There is no reason to believe that the EEOC process cannot similarly resolve disputes as to attorneys' fees.

---

**11.** The Court observed in *Alexander:*

Congress enacted Title VII ... to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin. Cooperation and voluntary compliance were selected as the preferred means for achieving this goal. To this end, Congress created the

Equal Employment Opportunity Commission and established a procedure whereby existing state and local equal employment agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit.

*Id.* (internal citation omitted).

Finally, in a reply brief Hansson draws the Court's attention to *Moore v. District of Columbia*, 907 F.2d 165 (D.C.Cir.1990) (en banc). There, the Court of Appeals concluded that a fee shifting provision in the Individuals with Disabilities Education Act ("IDEA")[12] similar to Section 706(k) provided an independent cause of action for attorneys' fees. *See id.* at 171. The Circuit relied on the legislative history of the provision at issue, which exhibited Congress' intent to model the fee shifting provision after Section 706(k) as it had been construed in *Gaslight*. At the time of the enactment of IDEA, *Crest Street* had not yet been decided. The court in *Moore* noted that it had no occasion to consider whether *Crest Street* had diminished the authority of *Gaslight* as judicial precedent. Rather, what mattered for the court's analysis of the IDEA provision was simply that Congress had reasonably assumed *Gaslight* to render an authoritative interpretation of Section 706(k) at the time, and had expressly intended that the IDEA fee provision be so applied.[13] *Moore* thus does not reconcile *Crest Street*

and *Gaslight*, and does not govern the outcome here.

■ The Court finds that the plain language and purposes of Sections 706(f)(3) and 706(k) comport more readily with the view that an action solely for attorneys' fees, after an agreement between the parties has put to rest any substantive Title VII dispute, is not within the subject matter jurisdiction of the federal district courts. The rationale of *Crest Street* would seem to dictate that conclusion notwithstanding the earlier dictum—the Supreme Court's term—in *Gaslight*. The Court notes that this conclusion does not affect Hansson's ability to pursue a modified award of attorneys' fees through the EEOC process detailed in the Resolution Agreement she signed. Nor does this conclusion necessarily prevent her from challenging the Secretary's final action on her attorneys' fee award as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in the manner typical of actions under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). What the Court cannot do, and what Hansson

---

**12.** That Act provides: "In any action or proceeding brought under this subsection, the court in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party." 20 U.S.C. § 141(e)(4)(B).

**13.** The actual words used in *Moore* were: "judicial constructions that *postdate* enactment of [the provision in question] are less relevant for inferring Congress' intentions .... It is unnecessary for us to address whether the reasoning in *Crest Street* and *Gaslight* can be reconciled. For no matter how much *Crest Street* diminishes the authority of *Gaslight* as a *judicial precedent,* it cannot diminish *Gaslight*'s significance as *evidence of Congress' intention* in using the phrase 'action or proceeding' in [the relevant statute]." *Id.* at 169 (emphasis original) (internal citations omitted). The reliance of the Court of Appeals on *Gaslight*'s policy arguments should not be

minimized, however. In its discussion of the Senate legislative history of the IDEA provision, the court found that *"Gaslight* further established the right under title VII to sue solely to obtain an award of attorney's fees for legal work done in State and local proceedings," citing the passage in *Gaslight* described as dictum in *Crest Street. Id.* at 174. The Court also noted that *Jones*, 857 F.2d at 496–98, 498 n. 10, had "held that *Gaslight*'s construction of section 706(k) survives *Crest Street's* construction of section 1988" without endorsing that result. *Id.* at 169 n. 6. Still, the court's express decision to limit its analysis of *Gaslight* to its impact on the legislative history of the IDEA provision at issue means that *Moore* does not illuminate the correct resolution of this case. Instead, this Court must be guided by the plain language and statutory context of Title VII, as well as the Supreme Court's subsequent evaluation of *Gaslight*'s policy concerns in *Crest Street.*

requests, is overstep the limited subject-matter jurisdiction conferred by Title VII to hold that an action for attorneys' fees divorced from any substantive claims under the statute may proceed.

### CONCLUSION

Accordingly, the Secretary's motion to dismiss shall be granted and Hansson's motion for summary judgment shall be denied. A separate order is issued herewith.

### ORDER

Upon consideration of defendant's motion to dismiss for lack of subject-matter jurisdiction, plaintiff's motion for summary judgment, and the entire record in this case, it is for the reasons stated in the memorandum opinion issued on this date hereby

ORDERED that defendant's motion to dismiss is granted; and it is further

ORDERED that plaintiff's motion for summary judgment is denied; and it is further

ORDERED that this case is dismissed in its entirety.